### In re POLARIS INDUSTRIES, INC.

#### No. 09–01–227 CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 6, 2001.

Decided Nov. 29, 2001.

Donean Surratt, David J. Fisher, Howard L. Close, Orgain, Bell & Tucker, LLP, Mitchell A. Toups, Weller, Green, Toups & Terrell, LLP, Beaumont, George W. Soule, Christine Lindblad, Tim Mattson, Bowman & Brooke, LLP, Minneapolis, MN, for realtor.

Gilbert T. Adams, Gilbert T. Adams, III, Cheryl A. Schultz, Law Office of Gilbert T. Adams, P.C., Beaumont, Vincent Lee Marable, III, Paul Webb, P.C., Wharton, for real party in interest.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

---

## OPINION

DAVID B. GAULTNEY, Justice.

In this products liability suit Polaris Industries, Inc. ("Polaris") seeks a writ of mandamus directing the trial court to vacate its sanctions order that struck Polaris's pleadings and that imposed liability on Polaris. Polaris claims the trial court erroneously found discovery abuse and violated the standards for the imposition of death penalty, or case determinative, discovery sanctions. We conditionally grant Polaris's petition for writ of mandamus.

### THE ACCIDENT

Letha Irving and her husband, Robert Irving, filed suit for damages against several defendants, including Polaris, a maker of personal watercraft ("PWC"), for injuries sustained in an accident that occurred on July 13, 1996. Letha Irving was operating a Kawasaki jet ski (PWC), and Anna Broughton was the operator of a Polaris jet ski (PWC). Irving asserts that Broughton released the throttle on the Polaris jet ski and attempted to steer it away from Irving, but could not do so once the throttle was released. The Polaris jet ski crashed into Letha Irving, who sustained multiple injuries, including an injury to her right leg that required its amputation.

### THE TRIAL COURT PROCEEDINGS

Alleging the product was defective, the Irvings sued the manufacturer, Polaris, for design defect, marketing defect, negligence, gross negligence, breach of warranty, bystander recovery, and conspiracy. The Irvings' petition claims the Polaris jet ski "lacked brakes and the ability to steer and/or any type of device which would assist in steering, turning, decelerating, controlling and/or stopping." The Irvings also sued Kawasaki Motors Corp., U.S.A. (Kawasaki),[1] the manufacturer of the jet

---

1. The Irvings' suit against Kawasaki Motors

Corporation U.S.A. also included several oth-

ski Letha Irving was operating, and Rayon's, Inc., the distributor of the Polaris jet ski.[2] After considerable discovery had been directed to Polaris, the Irvings filed a motion to compel. Following a hearing on March 16, 2001, the trial court entered an order overruling Polaris's objections to certain interrogatories and requests for production; the order required full and complete responses to the discovery requests. Polaris produced additional documents and filed supplemental answers to interrogatories. The Irvings then filed a motion for sanctions and several supplemental motions which included the following grounds, among others: failing to comply with the trial court's March 16, 2001, order on the Irvings' motion to compel; failing to produce requested documents; failing to timely supplement responses; making false statements; and breaching a Rule 11 agreement of March 16, 2001. On May 11, 2001, after a hearing at which only arguments of counsel were made and written proof was submitted, the trial court granted the Irvings' motion for sanctions and struck Polaris's pleadings.

## No Adequate Remedy By Appeal

Mandamus is an extraordinary remedy that may be utilized only when there is no adequate appellate remedy. *Walker v. Packer,* 827 S.W.2d 833, 841 (Tex.1992) (orig.proceeding). In striking Polaris's pleadings, the trial court issued case determinative sanctions and thereby denied Polaris the opportunity to develop the merits of its case on which any subsequent appeal would be based. Polaris has no adequate remedy by appeal. *See TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 920 (Tex.1991) (orig.proceeding).

## Abuse of Discretion

Appellate courts generally review trial court sanctions orders under an abuse of discretion standard. *See Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986). The issue in a mandamus proceeding is whether the trial court acted arbitrarily or unreasonably without reference to any guiding rules or principles. *See Walker,* 827 S.W.2d at 839; *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). The sanctions order here includes findings of fact. Findings of fact by a trial court in the discovery context are not given the same deference as fact findings made by a trial judge after a full trial on the merits where the judge serves as factfinder. *See United States Fidelity and Guar. Co. v. Rossa,* 830 S.W.2d 668, 672 (Tex.App.—Waco 1992, writ denied). In *Rossa,* the court held that the proper standard of review of a discovery sanctions order involves "an independent inquiry of the entire record to determine if the court abused its discretion in imposing the sanction." *Id.* This standard of review was expressly approved by the Texas Supreme Court in *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 852 (Tex.1992), where the court also noted that in the vast majority of cases the trial court's fact findings concerning death penalty sanctions do not "meaningfully assist appellate review." The Texas Supreme Court reaffirmed this less deferential appellate standard of review of sanctions orders in *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.,* 938 S.W.2d 440 (Tex.1997), where the court noted that an order imposing discovery sanctions "may be reversed for an abuse of discretion even if findings and evidence support it." *Id.* at 442. With respect to findings of law, a

---

er Kawasaki entities.

**2.** The instant suit and Irvings' suit against Rayon's, Inc. were consolidated.

trial court's failure to analyze or apply the law correctly will constitute an abuse of discretion. *See Walker*, 827 S.W.2d at 840.

### THE GUIDING RULES AND PRINCIPLES

 The guiding rules and principles for imposing discovery abuse sanctions were set forth by the Texas Supreme Court in *TransAmerican*, 811 S.W.2d at 913. First, to be a just sanction under TEX.R. CIV. PROC. 215, a direct relationship must exist between the offensive conduct and the sanction imposed. *TransAmerican*, 811 S.W.2d at 917. A just sanction is one that is targeted at the specific discovery abuse with a goal of remedying any prejudice caused to the innocent party. *Id.* Under this principle, the trial court must attempt to determine if the offensive conduct is attributable to the attorney, the party, or both. *Id.* Second, again to satisfy the Rule 215 requirement that the sanctions be just, the sanctions cannot be excessive. *TransAmerican*, 811 S.W.2d at 917. Describing this principle, the Texas Supreme Court has stated that "[t]he punishment should fit the crime." *Id.* This second principle generally requires a trial court to first test the effectiveness of lesser sanctions before entering death penalty sanctions. *Id.* at 918; *Blackmon*, 841 S.W.2d at 849.

 In addition to the above two principles that arise out of Rule 215, constitutional due process requirements must be met. *See TransAmerican*, 811 S.W.2d at 917–18. Constitutional due process precludes the imposition of sanctions that determine the merits of a case unless the discovery abuse justifies a legal presumption that the disobedient party's claims or defenses lack merit. *Id.* at 918.

### OUR HOLDING

 We have conducted "an independent inquiry of the entire record[.]" *See*

*Rossa*, 830 S.W.2d at 672. The trial court's order describes the conduct for which Polaris was sanctioned, which we summarize as follows:

1. Polaris's multiple violations of the March 16, 2001, order that compelled certain discovery responses.
2. False statements in response to discovery requests and letter inquiries by opposing counsel.
3. Failure to timely supplement responses to requests for production and answers to interrogatories.
4. Violation of Rule 11 Agreement.
5. Misleading statements in Polaris's response to the Irvings' motion to compel.
6. Violations of the Texas Penal Code.
7. Conscious disregard of TEX.R. CIV. P. 193.3.

Polaris argues that it did not abuse the discovery process and that the death penalty sanction is unwarranted. Polaris denies that it or its attorneys are felons. The sanctions order found that Polaris and its prior counsel committed felony offenses by violating TEX. PEN.CODE ANN. § 37.09 (Vernon Supp.2001), although no indictment was returned or trial held; in fact no oral testimony was presented. Basic due process rights were not granted defendant or its prior counsel before their behavior was labeled criminal. Therefore, we will review the defendant's and prior counsel's actual conduct and give no weight to the trial court's unsupportable labeling of the actions as violations of the Texas Penal Code.

Although Polaris's conduct during the discovery process was problematic and even perhaps sanctionable, we find no evidence to justify a legal presumption of lack of merit of the Polaris defense. We find no evidence of prejudice that cannot or has not been remedied. Also, we do not find

any effort by the trial court to first test lesser sanctions. In no way do we condone the discovery conduct here; but, generally, lesser sanctions should be tested before the imposition of death penalty sanctions. *See Hamill v. Level,* 917 S.W.2d 15, 16 (Tex.1996); *TransAmerican,* 811 S.W.2d at 918; *Blackmon,* 841 S.W.2d at 849–50. We find that, under the circumstances of this case, the basic requirements for imposing death penalty sanctions are not present.

### No Direct Relationship

■ Polaris contends no direct relationship exists between the offending conduct and the sanctions imposed. The Irvings maintain a relationship does exist-specifically relying on Polaris's failure to produce two joint defense agreements.

Two joint defense agreements were ultimately produced by Polaris-one from June 1997 and the other from March 1998. The sanctions order found the joint defense agreements were responsive to Request No. 6 of the Eighth Set of Requests for Production and numbers 39 and 40 of Irvings' First Set of Requests for Production and should have been timely produced when first requested. Instead, Polaris did not produce the agreements until sometime after the Irvings nonsuited Kawasaki. Although the Irvings and Polaris characterize the agreements differently, the documents in essence are agreements among PWC manufacturers and/or distributors to cooperate "in the legal representation and defense of their products, including sharing documents, factual material, mental impressions, memoranda, reports, data and other information, including the confidences of their Clients ("Defense Materials"), relating to the identified proceedings [legal issues or actions that may arise from the NOAA, Coast Guard, and/or NTSB proceedings]."

On November 2, 1999, the Irvings voluntarily dismissed Kawasaki early in the development of their case and prior to their learning of the existence of any joint defense agreement between certain PWC manufacturers. The Irvings claim that if Polaris had produced the joint defense agreements, the Irvings would have been made aware of the defendants' sharing of information and resources regarding PWC safety concerns and they would not have nonsuited Kawasaki and thereby "lost" their causes of action relating to negligence, conspiracy, and concert of action. Polaris views the Irvings' dismissal of Kawasaki differently; during oral argument before this court, Polaris seemed to suggest the Irvings nonsuited Kawasaki because they thought leg guard cases, such as the one the Irvings asserted against Kawasaki, had no merit. We are not privy to either party's strategy. Consequently, we do not accept Polaris's conclusion regarding the reasons for the nonsuit; neither do we accept the Irvings' argument that they lost a claim based on a 1996 accident against Kawasaki merely on the basis of Polaris's failure to produce joint defense agreements entered into in 1997 and 1998. The statute of limitations may have run on the Irvings' claim against Kawasaki; however, the possibility of that eventuality in this case was a known legal consequence when Kawasaki was dismissed from the case.

Whatever the reasons behind the Irvings' decision to nonsuit Kawasaki, there is no indication that Polaris, the defendant still in the suit, is unable to respond fully in damages, if found liable by a jury on the merits of this case. Furthermore, the Irvings are not precluded from trying their case against Polaris as a result of the alleged discovery abuse. The evidence on which the Irvings relied in their sanctions motions was produced, although the Irv-

ings complain the evidence was produced untimely. Provided it is admissible, the evidence they now have is available for use in a trial on the merits. Moreover, whether or not the joint defense agreements may be relevant to the suit, the agreements themselves, which Kawasaki also failed to produce in response to a discovery request, do not create a cause of action. The agreements were entered into after the occurrence of the accident involved in this case.

■ The death penalty sanctions were not targeted towards remedying prejudice because none resulted from the alleged abuse. In view of the Texas Supreme Court's holding in *TransAmerican,* we hold the trial court erred in imposing death penalty sanctions because no direct relationship exists between the offending conduct and the death penalty sanction.

### EXCESSIVENESS OF SANCTIONS

■ Polaris contends the sanctions are excessive. We agree. Even if a court finds that discovery abuse occurred, the trial court must not impose sanctions that are excessive. *See TransAmerican,* 811 S.W.2d at 917. Discovery abuse may have occurred in this case; certainly the Irvings maintain it did, and the trial court so found when it imposed sanctions. Sanctions so severe that they preclude a party's presentation of its case on the merits should not be assessed absent a party's bad faith or counsel's flagrant disregard for the responsibilities of discovery under the rules. *Blackmon,* 841 S.W.2d at 849. Even then lesser sanctions should be tested first to determine whether the lesser sanctions are adequate to secure compliance, deterrence, and punishment of the offending party. *Id.; see Hamill,* 917 S.W.2d at 16 n. 1.

■ Here, the trial court's order imposing sanctions stated that lesser sanctions were considered but not imposed,

and that the trial court had previously admonished Polaris that its ongoing conduct regarding discovery, if not abated, would result in sanctions. Though the Irvings argue the trial court's admonishment of Polaris at the motion to compel hearing constitutes a sanction, we disagree. The entry of an order to compel is not a lesser sanction under Rule 215. *See Williams v. Akzo Nobel Chems., Inc.,* 999 S.W.2d 836, 844 (Tex.App.—Tyler 1999, no pet.); *Westfall Family Farms, Inc. v. King Ranch, Inc.,* 852 S.W.2d 587, 592 (Tex.App.—Dallas 1993, writ denied). Neither does a threat nor the intent to sanction constitute a sanction. *Akzo Nobel Chems., Inc.,* 999 S.W.2d at 844 (A threat to dismiss for noncompliance is not a lesser sanction); *but see Andras v. Memorial Hosp. Sys.,* 888 S.W.2d 567, 572 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (An order to compel coupled with a threat to dismiss for noncompliance is a lesser sanction). In any event, no threat of death penalty sanctions for noncompliance was made prior to the entry of those sanctions here.

The trial court did not impose lesser sanctions first, and it has not been shown that lesser sanctions would have been ineffective. *See G.T.E. Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 729 (Tex. 1993). The trial court did impose monetary sanctions at the same time it imposed the death penalty sanctions, but imposition of lesser sanctions simultaneously with case determinative sanctions provides no test of the effectiveness of lesser sanctions first.

### DUE PROCESS CONSIDERATIONS

■ Very severe sanctions are restrained by constitutional due process. *TransAmerican,* 811 S.W.2d at 917. A trial on the merits is a fundamental due process right that cannot lightly be taken away by government action. *See generally*

*Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex.1983) (Fundamental fairness dictates that a party must be given a reasonable opportunity to be heard on the merits.). Unless a party's obstruction of the discovery process justifies a legal presumption that its claims or defenses lack merit, the trial court cannot use death penalty sanctions to adjudicate the merits of a party's case. *TransAmerican,* 811 S.W.2d at 918 (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 705–06, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).

In *TransAmerican,* the Texas Supreme Court cited several United States Supreme Court decisions for the principle that discovery sanctions cannot be used to adjudicate the merits of a case unless the party's discovery abuse justifies a legal presumption that the party's claims or defenses lack merit. *Id.,* 811 S.W.2d at 918. This principle of constitutional due process was set forth by the United States Supreme Court in *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 350–51, 29 S.Ct. 370, 53 L.Ed. 530 (1909), and the principle more recently has been referred to by the United States Supreme Court as "the Hammond Packing presumption." *See Insurance Corp. of Ireland, Ltd.,* 456 U.S. at 706, 102 S.Ct. 2099. The United States Supreme Court explained in *Hammond Packing* that, while the striking of a pleading is, of course, a punishment in a sense, it is only remotely so because "the generating source of the power [is] the right to create a presumption flowing from the failure to produce." *Id.,* 212 U.S. at 351, 29 S.Ct. 370. Due process is preserved "by the presumption that the refusal to produce evidence material to the administration of due process [is] but an admission of

the want of merit in the asserted defense." *Id.* The legal presumption arises "when such proof concerned the rightful decision of the cause[,]" i.e. the merits of the claim or defense. *Id.* The suppression of proof, when the suppression defeats a trial on the merits of the case, is treated as an admission by the party or as a constructive waiver of a trial on the merits. Entry of a judgment on the merits as a sanction is justified despite constitutional due process restraints where the sanctioned conduct is "but an admission" by a party or a constructive waiver. *Id.* The Texas Supreme Court has held, therefore, that due process allows the use of death penalty sanctions only when the discovery abuse justifies the legal presumption that the party's claims or defenses lack merit. *See Remington Arms Co., Inc. v. Caldwell,* 850 S.W.2d 167, 171 (Tex.1993).

 Though we do not condone Polaris's conduct during the discovery process, we do not believe the legal presumption of lack of merit is warranted here. Plaintiffs' requests for production numbers 39 and 40 asked Polaris to produce any agreements regarding this case, or any other case, between Polaris and any other defendant in this case. Polaris initially answered "none."[3] Polaris says that it did not view the joint defense agreements as agreements regarding this or any other case because the agreements did not concern the defense of personal injury litigation but rather were for potential regulatory litigation. The express language of the agreements refers to regulations pending at the time the agreements were signed and not to personal injury cases. We need not consider whether the agreements were privileged and confidential because they already have been produced by Polaris;

---

**3.** To those same requests for production, Kawasaki answered "[n]o such agreements are

known."

we simply find no evidence that the initial failure to produce these documents justifies a legal presumption that the Polaris defense lacks merit.

In request number two of the Irvings' Second Set of Requests for Production, Polaris was asked early on in the discovery process to produce any written reports concerning any device that provides for increased steering ability in a PWC in off-throttle steering situations. By supplemental response to the Irvings' second set of interrogatories, Polaris produced various patents that the trial court concluded should have been produced earlier in response to the request for production. Polaris argues the patents do not concern off-throttle steering devices. Polaris also produced a letter from a salesman in response to an interrogatory; the letter was dated 1½ years after the accident. These actions were cited by the trial court as grounds for sanctions. The trial court also found that two letters by prior defense counsel written to plaintiff's counsel were sanctionable. We do not believe this conduct justifies a legal presumption that the Polaris defense lacks merit.

The trial court found that a Rule 11 agreement to "fully and completely" answer a set of interrogatories constituted an agreement to produce privileged documents. We believe this stretches the language of the Rule 11 agreement too far. Nevertheless, the trial court based its sanctions order in part on the failure to produce privileged documents. This conduct by defendant or prior defense counsel does not constitute "but an admission," or a constructive waiver of the merits of the case, sufficient to justify a legal presumption that the Polaris defense lacks merit.

▆▆ We need not discuss each additional discovery dispute. Essentially, the trial court overruled objections made by Polaris to certain discovery requests and ordered production of documents and information. Polaris then produced documents and answered interrogatories. The Irvings now claim Polaris's pleadings should be stricken because Polaris did not produce all the discovery earlier without an order to compel. While this conduct may or may not be sanctionable in some other way, the conduct of Polaris and its counsel has not prejudiced the Irvings' ability to pursue the merits of their claim. Constitutional due process requires that cases be tried on the merits rather than by case determinative sanctions, with the rare exception of those cases where discovery abuse precludes "the rightful decision of the cause." *Hammond Packing*, 212 U.S. at 351, 29 S.Ct. 370. Polaris has not refused to provide non-privileged information; it responded to the trial court's order compelling answers and has paid the monetary sanctions. Here, the conduct may be sanctionable because the answers and responses were incomplete and needed timely supplementation, were evasive and involved unwarranted nitpicking interpretations of the questions, but the conduct here is not sufficient, given constitutional due process constraints, to warrant the legal presumption that the Polaris defense lacks merit. Without the constitutional authority to make that legal presumption, the trial court erred in assessing death penalty sanctions. *See Hamill*, 917 S.W.2d at 16.

## CONCLUSION

In view of the failure to first test the effectiveness of lesser sanctions, the lack of a direct relationship between the offending conduct and the case determinative sanctions imposed, the excessiveness of the sanctions, and the lack of any evidence in the record to justify the legal presumption that the Polaris defense lacks merit, we conclude the trial court abused its discre-

tion in imposing case determinative sanctions. We conditionally grant the writ of mandamus and direct the trial court to vacate its sanctions order of May 11, 2001. We are confident that the Honorable Judge Gary Sanderson will follow this opinion without issuance of a mandate; if not, one will be issued.

WRIT CONDITIONALLY GRANTED.