TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00635-CV






Mari Tierney Hartbrich, Appellant



v.



Bret-Ashley Vance, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 92-00668, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING







 This is an appeal from the district court's order striking appellant Mari Tierney
Hartbrich's pleadings as a discovery sanction and modifying the parties' divorce decree to award
appellee Bret-Ashley Vance the right to establish the primary residence of the couple's two children. 
The trial court made written findings of fact and conclusions of law. We will affirm the order of the
district court.


FACTUAL BACKGROUND


 This suit affecting a parent-child relationship was brought to decide which of the
parents, Hartbrich or Vance, should have the right to establish the primary residence of the children. 
The parties were divorced in 1992 in Austin and were appointed joint managing conservators. The
record does not contain the divorce decree, but apparently Hartbrich was initially the primary care
parent. Hartbrich now lives in California; Vance remained in Austin. Hartbrich voluntarily
relinquished physical custody of the children to their father, and they have been living with him in
Austin since at least October 1997. In May 1999, Vance filed a motion to modify the decree to
confirm that he had the right to decide the children's primary residence, alleging that there had been
a material change in circumstances. The parties agreed to temporary orders which were signed on
May 18, 1999, giving Vance the right to establish the children's primary residence and limiting the
children's residence to Travis County pending further agreement or order of the court. The agreed
order also provided that the parties were to reevaluate all issues concerning their children after one
year.

 In June 2000, Hartbrich apparently changed her mind about the arrangement. She
filed a motion asking that she be "granted the right of primary placement" for the children. She also
alleged that there had been a material change in circumstances and that the earlier decree had become
unworkable or inappropriate. Neither party asked to modify their joint managing conservatorship. 
On June 27, 2000, both children filed affidavits (1) choosing their mother as their sole managing
conservator, although Hartbrich never sought that relief. On July 18, 2000, the oldest child filed an
amended affidavit requesting to the contrary that she be allowed to live with her father. The court
appointed a guardian ad litem on July 20.

 A contested hearing on temporary orders was had before an associate judge on August
8 and 9. The judge ordered that Vance continue to have exclusive right to determine the primary
residence of the children, as ordered in the earlier agreed temporary orders, and ordered Hartbrich
to pay child support. The district court approved the associate judge's temporary orders on
November 15, 2000. Trial on the merits was set for March 5, 2001.

 Hartbrich's attorney was allowed to withdraw on January 26, 2001. Hartbrich filed
pro se a request for a jury trial. The case was reset for jury trial on September 10, 2001. On January
31, Vance served Hartbrich with requests for written discovery relating to both claims and defenses
on the issues in dispute. The answers to that discovery appear to have been due March 2. Vance
subsequently agreed to extend the deadline until March 9. On March 21, when Hartbrich still had
not responded, Vance filed a motion to compel Hartbrich to answer discovery and asked for
sanctions. At an April 4 hearing on the motion, the court granted the motion to compel and signed
an order requiring Hartbrich to answer Vance's written discovery by April 24, and further ordered
that if she failed to comply her pleadings would be stricken. The court also ordered Hartbrich to pay
Vance $777.50 attorney's fees. Hartbrich appeared in person at the April 4 hearing; the court
announced its ruling verbally in open court as well as in writing. She received a written copy of the
order informing her of the April 24 deadline.

 On April 24, Hartbrich called Vance's attorney and requested yet another extension
of time to answer the discovery. She told the attorney that she was unable to complete the discovery
due to a sudden death in her family. The attorney advised Hartbrich that she could not agree to an
extension without consulting her client. Hartbrich did not submit answers to the discovery. 
Nevertheless, the attorney for Vance did not immediately seek court intervention.

 On May 8, in the continued absence of response, Vance filed a motion to strike
Hartbrich's pleadings for failure to comply with the April 4 order. The court set a May 17 hearing
on the motion. On May 16, Vance's attorney was contacted by a new attorney for Hartbrich, who
related that Hartbrich had attempted to send the discovery responses on April 23, but there had been
a mistake made by the express delivery company. This explanation contradicted Hartbrich's earlier
excuse to Vance's attorney on April 24 when she stated that she had been unable to complete the
discovery due to her aunt's death. Vance went forward on his motion to strike. After a hearing on
May 17, an associate judge recommended striking Hartbrich's pleadings. At Hartbrich's request,
the court set a de novo hearing for June 11 before the district judge.

 By the time of the June 11 hearing, Hartbrich still had not answered the January 31
discovery requests. Vance's attorney testified at the hearing about the discovery delay, her dealings
with Hartbrich after Hartbrich's attorney withdrew, and the attorney's fees incurred by Vance in
pursuing discovery. Hartbrich testified also, describing some of her efforts to comply, and she gave
limited responses on other issues. At the hearing, she tendered incomplete responses to the
discovery requests. The district court found that Hartbrich had shown a pattern of obstruction and
delay, that she understood her obligations but consciously disregarded the prior court order and her
obligation to answer written discovery, and that, at the time of the hearing, she still had not fully
answered the discovery requests. The court struck Hartbrich's pleadings and, in light of her default,
proceeded on Vance's request to modify the original decree. The court rendered an order providing
among other terms that: (1) the parties would continue as joint managing conservators; (2) Vance
had the sole right to establish the primary residence of the children; and (3) Hartbrich was to pay him
child support. The order provided for the standard possession order in accordance with the Family
Code. The court expressly found that the lengthy and continuing uncertain status of the children was
against their best interests and the terms of the modification order were in the best interests of the
children. Hartbrich now appeals.


DISCUSSION


 Hartbrich complains on appeal that the district court abused its discretion by: (1)
striking her pleadings and rendering a default order, and (2) granting the modification in the absence
of evidence that the modification would be a positive improvement or in the best interest of the
children.


Sanctions

 We review a district court's decision finding discovery abuse and ordering sanctions
for an abuse of discretion. Bodnow Corp. v. City of Hondo, 721 S.W.2d 839, 840 (Tex. 1986). A
trial court is accorded the broadest discretion in choosing and imposing discovery sanctions. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex. 1985). A court abuses its
discretion when it acts arbitrarily and capriciously without reference to any guiding principles of law. 
Id. at 241-42; Ditraglia v. Romano, 33 S.W.3d 886, 888 (Tex. App.--Austin 2000, no pet.).

 A court abuses its discretion if it imposes discovery sanctions that are not just. See
Transamerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991). The justness of a
sanction is measured by (1) whether the sanction is directed at the offender and remedies the
prejudice caused by the noncompliance, and (2) whether the sanction is excessive or whether the
"punishment fits the crime." Id. The appellate court considers factors such as whether the trial court
first imposed lesser sanctions and whether the discovery abuse is severe enough to justify the
presumption that the offender's claims or defenses lack merit. Chrysler Corp. v. Blackmon, 841
S.W.2d 844, 849 (Tex. 1992). Sanctions that prevent a party from presenting its case on the merits
should not be imposed absent the party's bad faith or counsel's flagrant disregard of discovery rules. 
Id. Because the best interests of children are of paramount importance, more severe sanctions should
be employed only when lesser ones have proven unsuccessful. In re P.M.B., 2 S.W.3d 618, 624-25
(Tex. App.--Houston [14th Dist.] 1999, no pet.).

 With regard to attempts at lesser sanctions, an order compelling discovery that does
nothing more than order compliance is not an attempt at a lesser sanction. See GTE Mobilnet of
South Tex. Ltd. P'ship v. Telcell Cellular, Inc., 955 S.W.2d 286, 298 (Tex. App.--Houston [1st
Dist.] 1997, pet. denied). However, an order compelling discovery coupled with language that
noncompliance can result in dismissal does constitute a lesser sanction. Andras v. Memorial Hosp.
Sys., 888 S.W.2d 567, 572 (Tex. App.--Houston [1st Dist.] 1994, writ denied); see also Allied
Resources Corp. v. Mo-Vac Serv. Co., Inc., 871 S.W.2d 773, 779 (Tex. App.--Corpus Christi 1994,
writ denied) (holding order threatening death penalty sanction was unequivocal and self-executing);
Jaques v. Texas Employers' Ins. Ass'n, 816 S.W.2d 129, 131 (Tex. App.--Houston [1st Dist.] 1991,
no writ) (holding death penalty sanctions appropriate where party was aware that pleadings would
be stricken if he failed to comply with order); but see In re Polaris Indus., 65 S.W.3d 746, 755-56
(Tex. App.--Beaumont 2001, orig. proceeding); Williams v. Akzo Nobel Chem., Inc., 999 S.W.2d
836, 844 (Tex. App.--Tyler1999, no pet.); Westfall Family Farms, Inc. v. King Ranch, Inc., 852
S.W.2d 587, 592 (Tex. App.--Dallas 1993, writ denied).

 The district court's finding that Hartbrich had engaged in discovery abuse is
supported by the record. Although the parties had agreed to all matters from 1997 to 2000, Hartbrich
eventually changed her position regarding Vance's serving as primary parent, filed her own motion,
and requested a jury trial on the issues, all necessitating more extensive discovery concerning both
claims and defenses. Hartbrich's attorney withdrew on January 26 and Hartbrich did not retain a
new attorney until May 16, the day before the first hearing on the motion to strike. Hartbrich
persistently failed to furnish discovery and ignored a court order to do so. At the time of the hearing
on Vance's motion to strike, Hartbrich still had not complied with the discovery requests. It was
Hartbrich's responsibility to obtain representation promptly, especially in light of the impending
hearings and trial dates. Hartbrich's pro se status did not excuse her from her obligations to answer
discovery and prepare her claims and defenses for trial or excuse her from complying with the rules
of law or procedure. Steffan v. Steffan, 29 S.W.3d 627, 631 (Tex. App.--Houston [14th Dist.] 2000,
pet. denied). "Litigants who represent themselves must comply with the applicable procedural rules,
or else they would be given an unfair advantage over litigants represented by counsel." Mansfield
State Bank v. Cohn, 573 S.W.2d 181, 184-85 (Tex. 1978); Chandler v. Chandler, 991 S.W.2d 367,
378-79 (Tex. App.--El Paso 1999, pet denied). 

 Our review of the record does not reveal that the district court's sanction was 
excessive. Hartbrich was present at the April 4 hearing when the order compelling her to respond
to discovery was signed. The court informed her that if she did not answer the discovery her
pleadings would be stricken. She was ordered to reimburse Vance for the attorney's fees he incurred
as a necessity of the motion to compel. Her excuse to Vance's attorney on April 24 was at odds with
her subsequent story as conveyed by her new attorney. She had not responded to discovery by May
17 and she had not done so by the June 11 hearing. Her dilatory tactics and the fact that she was less
than candid about the reasons for her failure to obey the order support the presumption that her
claims and defenses lacked merit. See Blackmon, 841 S.W.2d at 849.

 More importantly, the record contains evidence from which the court could conclude
that prolonging the legal tug-of-war between these two parents was detrimental to their children. 
The district court's sanction was directed at the offender and was crafted to address the prejudice the
discovery abuse caused the children. When a court sits as the fact finder, the court is entitled to
judge the credibility of the witnesses and the weight to be given their testimony. Tate v. Commodore
County Mut. Ins. Co., 767 S.W.2d 219, 224 (Tex. App.--Dallas 1989, writ denied). The fact finder
is able to evaluate a witness's demeanor and is entitled to believe all, part, or none of a witness's
testimony. Id. The trial court expressly applied the standards set out in Transamerica in ruling on
the motion to strike and in ordering sanctions. We hold that Hartbrich has not shown that the district
court abused its discretion in striking Hartbrich's pleadings for discovery abuse. We overrule
Hartbrich's first issue on appeal.

 Furthermore, we note that although the temporary orders in place during the pendency
of the action favored the father and superseded the decree while in effect, it was the original divorce
decree to which the parties' pleadings were addressed. Striking her pleadings did not alter
Hartbrich's legal position under the decree. The decree named the parties joint managing
conservators; neither party requested modification of that order. The decree gave Hartbrich the right
to establish the primary residence of the children. Vance's motion sought to reverse those terms in
his favor, while Hartbrich's pleadings, in effect, asked that the terms of the decree be continued
unchanged. Unless, pursuant to Vance's motion, the court made the findings necessary to modify
the orders in the decree, Hartbrich would remain the primary parent even in the absence of her
pleadings.


Modification

 By Hartbrich's agreement, the children lived with their father from October 1997 to
June 2000, and pursuant to the court's temporary order continued living with him until the hearing
on June 11, 2001, a period of almost four years. In light of her default, the court proceeded to
consider Vance's pleadings asking that the previous decree be modified so as to grant him the right
to establish the children's primary residence, but he retained the burden to prove in accordance with
the statute that modification was in the children's best interest or else the previous decree would
remain in effect. The trial court found that he met his burden.

 Hartbrich complains that the trial court abused its discretion by rendering a decision
on the merits of Vance's motion. She argues that the trial court could not properly proceed to render
a final decision at the June 11 hearing, but she cites us to no authority for that proposition and did
not raise that complaint in the trial court. She contends that the record contains no evidence to
support a number of the court's express findings, in particular the finding that modification was in
the best interest of the children. She complains that the court failed to find, as required, that
modification was a positive improvement for the children, but in any event she contends the record
contains no evidence of that fact either.

 We review a district court's decisions concerning child custody matters in a suit
affecting the parent-child relationship for an abuse of discretion. Pena v. Pena, 8 S.W.3d 639, 639
(Tex. 1999); Weimer v. Weimer, 788 S.W.2d 647, 650 (Tex. App.--Corpus Christi 1990, no writ). 
The Family Code provides that "the best interests of the child[ren]" are always the primary
consideration in questions of child custody and access. Tex. Fam. Code Ann. § 153.002 (West
1996); Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex. App.--Austin 1997, no pet.). A trial court's
decision about the best interests of children will not be disturbed unless the record as a whole shows
a clear abuse of discretion, Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982), meaning that
it acted unreasonably, arbitrarily, or without regard to guiding legal principles. Lilley v. Lilley, 43
S.W.3d 703, 705 (Tex. App.--Austin 2001, no pet.).

 Evidentiary challenges under an abuse of discretion standard of review are not
independent grounds of error, but are relevant factors in assessing whether the trial court abused its
discretion. Doyle, 955 S.W.2d at 479; contra Jenkins v. Jenkins, 16 S.W.3d 473, 478 (Tex.
App.--El Paso 2000, no pet.). Hartbrich argues that, even though her pleadings were stricken and
an order rendered against her, Vance was still under a burden to produce evidence showing that a
modification of the decree would be a positive improvement for and in the best interests of the
children. (2) She points out that Vance was not personally present at the hearing and did not testify but
nonetheless was awarded the relief he requested. 

 On the other hand, both Hartbrich and her attorney were present at the hearing. 
Vance's attorney and Hartbrich both testified. Hartbrich claims the record lacks evidence to support
the court's order. Although the evidence presented at the hearing was slim, we hold it was sufficient
for the court to exercise its discretion. The trial court took judicial notice of the court's extensive
file over the two years the matter was pending in court, including the pleadings, motions, and orders
up to June 11, and the status of the children during the pendency of the proceeding. It is undisputed
that Hartbrich voluntarily relinquished possession of the children to Vance in October 1997. With
Hartbrich's consent and agreement that the change was in their best interest, the children resided
with Vance from that time until the contested temporary hearing in August 2000, and they continued
living with him thereafter pursuant to the court's temporary order which found the arrangement to
be in their best interest. At the time of the hearing on June 11, 2001, the children had been living
with Vance almost four years. Hartbrich testified on cross-examination that the children were
making good grades in school and that the children had relatives, including a grandmother and a half-sister, living in Austin. Vance's pleadings alleged and Hartbrich never denied that she voluntarily
left the children with Vance for a period of more than six months. (3) The temporary orders in effect
for most of the pendency of the proceeding were entered pursuant to the parties' agreed arrangement
as to the children's best interest or rendered following a lengthy evidentiary hearing to decide their
welfare.

 Hartbrich specifically complains that the court erred by failing to find whether the
modification sought by Vance would be a positive improvement in the children's circumstances, an
element required under former section 156.202 of the Family Code. She contends that the record
contains no evidence of positive improvement. Before the June 11 hearing, the legislature repealed
section 156.202, and section 156.101 was amended to set forth the standards applicable to all
conservatorship rulings. See Tex. Fam. Code Ann. § 156.101 (West Supp. 2002). The trial court
signed the final order on August 15 and the statutory changes became effective on September 1. As
amended, movants now are only required to show that (1) the circumstances of the child, a
conservator, or any other party affected by an order have materially and substantially changed and
(2) the modification would be in the best interest of the child. See id. The amended statute
eliminated the "positive improvement" (4) requirement for modifications. See id. While
acknowledging that section 156.202 was repealed effective September 1, 2001, Hartbrich
nevertheless asserts that the repealed section 156.202 governs this case.

 At the time the order appealed from was signed, positive improvement was a required
element to be proven; two weeks after the modification order was signed, however, the requirement
was removed. When the court issued its findings of fact October 8, it did not make the repealed
finding. Were we now to reverse and remand the cause for a new trial on that basis, the trial court
would not be required to find positive improvement in order to modify the decree. Thus, reversal
on that ground would be a useless act.

 We hold that by ordering modification the trial court made an implied finding of
positive improvement. In any event, were we to accept Hartbrich's contention, the record in this case
shows that the modification ordered by the district court was a positive improvement. We disagree
with Hartbrich's argument that there is insufficient evidence of either positive improvement or best
interest. The divorce decree which granted Hartbrich primary custody had clearly become
unworkable as the trial court found. Contrary to the decree, Hartbrich voluntarily allowed the
children to live with Vance for several years. Hartbrich later sought to revert to the orders in the
court's 1992 decree when the record showed they were in conflict with the actual practice which had
long been in effect. Vance's effort to modify sought to make permanent the status quo as it had
existed since 1997; the cause continued without final resolution for a lengthy time. The district
court's order merely formalized the status quo, once the prior order had become unworkable. 
Providing consistency and permanency was a positive improvement for these children. The trial
court found that living in an unresolved status was not in the children's best interest; therefore,
permanency was necessarily a positive improvement. We hold that the district court did not abuse
its discretion in modifying the decree and awarding Vance the right to determine the primary
residence of the children. We overrule Hartbrich's second issue on appeal.


CONCLUSION


 The order of the district court is affirmed.



 

 Marilyn Aboussie, Chief Justice

Before: Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: November 7, 2002

Do Not Publish

1. At the time the affidavits were filed, the statute then in effect provided that a child ten years
of age or older could file an affidavit stating the child's preference for a primary care parent; the
oldest child in this case was one month short of her eleventh birthday and the youngest was only nine
years of age. See Act of May 30, 1999, 76th Leg., R.S., ch. 1390, § 16, 1999 Tex. Gen. Laws 4696,
4700, eff. Sept. 1, 1999 (reducing age for filing affidavit of preference from twelve years to ten years
of age). The statute was amended in 2001. See Tex. Fam. Code Ann. § 156.101(2) (West Supp.
2002) (raising minimum age at which child can file affidavit stating preference of primary care
parent from ten years of age to twelve years of age).
2. See Act approved April 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113,
174, eff. April 20, 1995, and Act approved June 16, 1995, 74th Leg., R.S., ch. 751, § 48, 1995 Tex.
Gen. Laws 3888, 3906, eff. Sept. 1, 1995 (former Tex. Fam. Code Ann., 156.202(2)), repealed by
Act of May 23, 2001, 77th Leg., R.S., ch. 1289, § 12(2), 2001 Tex. Gen. Laws 3108, 3108-09, eff.
Sept. 1, 2001 (current version in Tex. Fam. Code § 156.101 (West Supp. 2002)).
3. See Tex. Fam. Code Ann. § 156.101(3) (West Supp. 2002) (providing for modification of
conservatorship if "the conservator with exclusive right to establish the primary residence of the
child has voluntarily relinquished the primary care and possession of the child in another person for
at least six months.").
4. The requirement of "positive improvement" in modification cases had its roots in the
legislative policy that because a change of custody disrupts the child's living arrangement and the
channels of the child's affections, a change was only to be made when the trial court is convinced
that the change will be a positive improvement for the child. In re Ferguson, 927 S.W.2d 766, 968
(Tex. App.--Texarkana 1996, no writ). By repealing section 156.202 and amending section
156.101, the legislature arguably broadened a trial court's discretion in modifying custody orders and
lessened the movant's burden. In practice, the "positive improvement" prong is subsumed within
the issue of the children's best interest.