**In re WESTERN STAR TRUCKS US, INC.; Freightliner, LLC; and Western Star Trucks Sales, Inc.**

No. 11–03–00170–CV.

Court of Appeals of Texas, Eastland.

July 31, 2003.

2. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Channy F. Wood, James H. Wood, Wood Law Firm, L.L.P., Amarillo, Blake Tartt, Brit T. Brown, Jeffery Taylor Nobles, Beirne, Maynard & Parsons, L.L.P., Houston, Kenneth L. Maxwell, Jr., Law Office of Kenny Maxwell, Sweetwater, for appellant.

Mark Edwards, Dist. Atty., Sweetwater, for appellee.

Panel consists of ARNOT, C.J., and McCALL, J., and McCLOUD, S.J.*

### Order

TERRY McCALL, Justice.

Our former opinion and judgment dated July 29, 2003, are withdrawn, and our opinion and judgment dated July 31, 2003, are substituted therefor.

### Opinion

This is an original mandamus proceeding concerning various discovery orders entered by the trial court. Relators, Western Star Trucks US, Inc. (Western Star Trucks US), Freightliner, LLC (Freightliner), and Western Star Trucks Sales, Inc. (Western Star Trucks Sales), complain of four pretrial rulings entered by the trial court. We conditionally grant a writ of mandamus.

### Procedural History

The real party in interest in this proceeding is Freeman & Sons Trucking, Inc. (Freeman). Freeman entered into a carriage contract with one of the relators, Western Star Trucks US, in 2000 to transport trucks manufactured in Mexico for Western Star Trucks US. Freeman filed suit against Western Star Trucks U.S. and

several other entities, alleging fraudulent inducement and negligent misrepresentation in connection with the carriage contract. Relators Western Star Trucks Sales and Freightliner are also defendants in the trial court proceedings. At the time of the execution of the carriage contract, Western Star Trucks U.S. and Western Star Trucks Sales were subsidiaries of Western Star Trucks Holdings, Ltd.[1] Freightliner acquired 100 percent of the stock of Western Star Trucks Holdings, Ltd. after the execution of the carriage contract.

The disputes at issue in this mandamus proceeding stem from Freeman's efforts to impose liability against Freightliner. Until very recently, Freeman's allegations of liability against Freightliner only consisted of the following assertions:

1. Freightliner is the successor-in-interest to Western Star Trucks Holdings, Ltd. and/or Western Star Trucks US; and

2. Freightliner agreed to assume the debts and liabilities of Western Star Trucks Holdings, Ltd. and/or Western Star Trucks US.

As set forth in greater detail below, Freeman has filed a supplemental pleading which includes several additional theories of recovery against Freightliner. Freeman also seeks to impose joint and several liability against Western Star Trucks US, Western Star Trucks Sales, Western Star Trucks Holdings, Ltd., and Western Star Trucks, Inc. under the "single business enterprise" rule and the "joint enterprise" rule.[2]

The events leading to the filing of this mandamus proceeding occurred in the

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. Western Star Trucks Holdings, Ltd. has not been named as a defendant in these proceedings.

2. As noted above, "Western Star Trucks US"

month preceding the trial setting of June 10, 2003. On May 12, 2003, Freeman filed a motion entitled "Motion for Sanctions." Freeman alleged in the motion that relators had engaged in a pattern of discovery abuse.[3] Freeman asked the trial court to deem the following fact in its favor against Freightliner:

> Freightliner LLC is the successor-in-interest to Western Star Trucks Holdings Ltd. and Western Star Trucks Inc. Freightliner LLC agreed to assume the debts and liabilities of Western Star Trucks Holdings Ltd. and Western Star Trucks, Inc. Therefore, Freightliner LLC is now liable for Freeman & Sons' damages and injuries caused by the actions and omissions of Western Star Trucks Holdings Ltd. and Western Star Trucks Inc.[4]

In the motion for sanctions, Freeman additionally sought the production of documents showing Freightliner's net worth.

At the May 16, 2003, hearing on motion for sanctions, relators asserted that Freeman's request for the entry of findings against relators as sanctions would be improper because Freeman had not sought the entry of orders compelling discovery or imposing lesser sanctions. Relators further argued that documentation of Freightliner's net worth was not discoverable because Freeman had not asserted a sufficient theory of recovery which would support an award of exemplary damages against Freightliner. At the conclusion of the hearing, the trial court announced the following rulings which are germane to this proceeding:[5]

1. Relators must produce documents reflecting Freightliner's net worth;

2. Relators must provide a person or persons who can testify by deposition at Freeman's convenience in either Amarillo, Texas, or Sweetwater, Texas, as to all questions of successor-in-interest, single business enterprise, and vicarious liability of Freightliner and the Western Star entities;[6]

---

and "Western Star Trucks Sales" are named defendants/relators. "Western Star Trucks Holdings, Ltd." and "Western Star Trucks, Inc." are not parties to these proceedings. As used herein, the term "Western Star entities" collectively refers to these four entities.

3. Specifically, Freeman complained that relators had refused to: (1) stipulate or admit that Freightliner is the successor-in-interest to Western Star Trucks Holdings, Ltd. and Western Star Trucks, Inc.; (2) produce documents proving or disproving successor-in-interest liability on the part of Freightliner; (3) produce a corporate representative who could testify about Freightliner's acquisition of Western Star Trucks Holdings, Ltd. and/or Western Star Trucks, Inc.; (4) produce documents discussing the relationship between the various Western Star entities; and (5) "[offer] a penny to settle" Freeman's claims. Freeman additionally protested in the motion for sanctions that relators had objected to producing documents requested in discovery,

were tardy in the production of requested documents, objected to questions asked during the deposition of a corporate representative, and breached the terms of Rule 11 agreements concerning discovery. See TEX. R.CIV.P. 11.

4. Freeman also asked the court to enter a finding of joint and several liability between the Western Star entities under the "single business enterprise" rule and the "joint enterprise" rule.

5. Prior to announcing its rulings, the trial court made the following statement: "Well, it seems to me that games have been played. At this point it may be unfortunate for [Freeman] that the [relators] haven't really played games with the Court; they've played games with you."

6. Freeman's attorneys' office is located in Amarillo. Sweetwater is the county seat of Nolan County.

3. Relators must produce all documents that reflect any successor-in-interest, single business enterprise, or vicarious liability between Freightliner and the Western Star entities; and

4. Joshua Palmer must appear and give his deposition at Freeman's convenience in either Amarillo, Texas, or Sweetwater, Texas.

The trial court directed relators to comply with these orders on or before May 23, 2003. The trial court further advised relators that they would be required to appear and show cause if these actions were not completed by May 23. The trial court signed the written order on May 20, 2003.

During the week between the announcement of the trial court's rulings on May 16 and the May 23 compliance date, Freeman filed a supplemental petition.[7] The supplemental petition contained the following additional theories of recovery:

1. Western Star Trucks US, Western Star Trucks Sales, Western Star Trucks Holdings, Ltd., Western Star Trucks, Inc., and Freightliner are jointly and severally liable for Freeman's damages under the principles of "alter ego" and ratification;

2. Western Star Trucks US, Western Star Trucks Sales, Western Star Trucks Holdings, Ltd., Western Star Trucks, Inc., and Freightliner are jointly and severally liable for Freeman's damages under the principles of the "single business enterprise" rule and the "joint enterprise" rule;

3. Western Star Trucks US, Western Star Trucks Sales, Western Star Trucks Holdings, Ltd., Western Star Trucks, Inc., and Freightliner are jointly and severally liable for Freeman's damages because their corporate form is used as a sham to perpetuate a fraud by using the corporate form as a sham to avoid corporate debts and liabilities;

4. Freightliner employed cunning, deception, or artifice to circumvent, cheat, or defraud Freeman;

5. Freightliner engaged in negligent misrepresentation;

6. Freightliner acted maliciously with the specific intent to harm Freeman, thereby permitting the imposition of exemplary damages against Freightliner; and

7. Freightliner defrauded Freeman, thereby permitting the imposition of exemplary damages against Freightliner.

Relators filed a motion to strike the May 17 supplemental petition on the ground that it was untimely in light of the impending trial setting of June 10.

As of May 23, relators had not complied with most of the trial court's May 16 rulings.[8] Instead, relators filed a motion for reconsideration of the May 16 rulings. The trial court entered an order to show cause on May 21, 2003, which required relators to appear on May 23, 2003, and show cause why they had not complied with the May 16 orders. At the conclusion of the May 23 show-cause hearing, the trial court announced its finding that relators had failed to comply with the court's May 16 rulings and had failed to show good cause for the failure to comply. After

---

7. The supplemental petition was filed on or about May 17, 2003. Freeman contends that the allegations contained in the supplemental petition are based on information contained in documents which relators produced on May 16, 2003.

8. Relators produced approximately 3,000 pages of documents on May 23 which they asserted were relevant to Freightliner's relationship to the Western Star entities.

denying relators' motion for reconsideration and motion to strike Freeman's supplemental pleading, the trial court ordered relators to produce Joshua Palmer for deposition at a time and place of convenience to Freeman in either Amarillo, Texas, or Sweetwater, Texas, on or before May 30, 2003. The trial court further ordered relators to produce documents on or before May 28, 2003, reflecting the net worth of Freightliner. The trial court then entered the following deemed finding against relators:

I further find by way of sanctions that [Western Star Trucks US], [Western Star Trucks Sales], Western Star Trucks Holdings, Ltd., Western Star Trucks, Inc., and [Freightliner] are jointly and severally liable for [Freeman's] damages and injuries because of (sic) their corporate [form] was and is used as a sham to avoid corporate debts and liabilities, to be taken as established.

Relators filed a petition for mandamus in this court on May 27, 2003. Relators additionally filed an emergency motion for temporary relief on May 27, 2003, requesting a stay of the trial court proceedings. On May 27, 2003, we granted the motion for temporary relief and entered an order staying the trial court proceedings.

### Relators' Requested Relief

Relators seek mandamus relief on the following four matters:

1. The trial court's order denying relators' motion to strike Freeman's supplemental petition;

2. The trial court's order requiring the production of Freightliner's net worth information;

3. The trial court's order requiring Joshua Palmer to appear for a deposition in Amarillo or Sweetwater; and

4. The trial court's order deeming a finding of joint and several liability against Freightliner and several other Western Star entities.

### Standards for Mandamus Relief

■ Mandamus is an extraordinary remedy available "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)(orig. proceeding). To obtain mandamus relief, the relator must demonstrate a clear abuse of discretion for which there is no adequate remedy at law. *Walker v. Packer*, supra at 839–40. A party establishes that no adequate remedy at law exists by showing that the party is in real danger of permanently losing its substantial rights. *Canadian Helicopters Limited v. Wittig*, 876 S.W.2d 304, 306 (Tex.1994). Thus, mandamus will not issue absent "compelling circumstances." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996).

### Denial of Relators' Motion to Strike Freeman's Supplemental Pleading

■ The record is not clear as to the trial court's basis for denying relators' motion to strike Freeman's supplemental pleading. It appears that the trial court initially denied the motion on its merits. The trial court later indicated that it denied the motion to strike as a discovery sanction. Irrespective of the trial court's basis for denying the motion, we conclude that the denial of the motion cannot be reviewed in this mandamus proceeding. As a preliminary matter, the record does not indicate that relators filed a motion for continuance after the denial of their motion to strike Freeman's supplemental pleadings. A request for a continuance is a prerequisite for obtaining appellate re-

view of the denial of a motion to strike a pleading. *Beard v. Beard,* 49 S.W.3d 40, 52 (Tex.App.-Waco 2001, pet'n den'd). Relators' complaint regarding the denial of the motion to strike would therefore appear to be premature.

■ The decision to accept or reject an amended pleading is an inherently discretionary function of the trial court. *Hardin v. Hardin,* 597 S.W.2d 347, 349 (Tex.1980). The right to amend pleadings is to be liberally construed. *Lee v. Key West Towers, Inc.,* 783 S.W.2d 586, 588 (Tex.1989). As such, a trial court's decision to permit an amended pleading is not particularly amenable to review by mandamus. Moreover, a reviewing court lacks jurisdiction to issue writs of mandamus to supervise or correct incidental rulings of the trial court when there is an adequate remedy through appeal. *Abor v. Black,* 695 S.W.2d 564, 566 (Tex.1985). It would appear that relators have an adequate remedy through appeal to seek review of the trial court's denial of the motion to strike. A remedy by ordinary appeal is not inadequate merely because it may involve more expense or delay than obtaining a writ of mandamus. *Walker v. Packer,* supra at 842.

*Discovery of Freightliner's Net Worth*

■ Information regarding net worth is discoverable in cases in which exemplary damages may be awarded. *Lunsford v. Morris,* 746 S.W.2d 471, 473 (Tex. 1988)(orig. proceeding), *overruled on other grounds, Walker v. Packer,* supra at 842. Relators argue that information pertaining to Freightliner's net worth is not discover-

able because Freeman has not pleaded sufficient allegations which would permit a recovery of exemplary damages. Relators cite *Al Parker Buick Company v. Touchy,* 788 S.W.2d 129, 131 (Tex.App.-Houston [1st Dist.] 1990)(orig. proceeding), for the basic proposition that Freeman must allege facts showing that Freightliner is liable for exemplary damages. Relators further argue that the holding in *Al Parker Buick Company* should be extended to require Freeman to make a prima facie showing of its entitlement to exemplary damages against Freightliner before discovery of Freightliner's net worth information is permitted.[9]

■ As noted by the court in *Al Parker Buick Company,* the Texas Supreme Court expressly held in *Lunsford* that a party seeking discovery of net worth information is not required to make a prima facie showing of an entitlement to exemplary damages before discovery is permitted. *Lunsford v. Morris,* supra at 473; *Al Parker Buick Company v. Touchy,* supra at 131. In light of controlling authority to the contrary, we reject relators' contention that Freeman should be required to make a prima facie showing of its entitlement to exemplary damages before obtaining discovery of Freightliner's net worth.

■ TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a) (Vernon 1997) permits a recovery of exemplary damages when the harm for which the claimant seeks recovery results from fraud or malice. Freeman seeks a recovery of exemplary damages in its supplemental

---

**9.** Relators base their argument for extending the holding in *Al Parker Buick Company* on Justice Raul Gonzalez's dissenting opinion from the denial of the petition for writ of mandamus in *In re Jerry's Chevrolet–Buick, Inc.,* 977 S.W.2d 565 (Tex.1998). Justice Gonzalez suggested that a plaintiff should be required to make a prima facie showing that exemplary damages are appropriate before obtaining discovery of net worth information. See *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 331–32 (Tex.1993) (Gonzalez, J., concurring).

pleading against Freightliner based upon allegations that Freightliner has engaged in fraudulent and malicious conduct. Since "there is no evidentiary threshold a litigant must cross before seeking discovery," these allegations are sufficient to permit Freeman to obtain discovery of Freightliner's net worth. *Lunsford v. Morris,* supra at 473; *Al Parker Buick Company v. Touchy,* supra at 131. Accordingly, we deny relators' request for mandamus protection from producing Freightliner's net worth information.

### Deposition of Joshua Palmer

Relators additionally seek mandamus protection from the trial court's order requiring Joshua Palmer to give his deposition in either Amarillo or Sweetwater. The record reflects that Palmer is a resident of Oregon. He serves as in-house counsel to Freightliner. Palmer has not been designated as a corporate representative by relators under the provisions of TEX.R.CIV.P. 199.2(b)(1).

The matter regarding Palmer's deposition was not addressed in Freeman's May 12 motion for sanctions. The matter came up at the May 16 hearing during the trial court's announcement of its rulings on the motion for sanctions. Freeman's counsel informed the court that Freeman wanted to take Palmer's deposition to obtain information about the relationship between Freightliner and the Western Star entities. The trial court granted Freeman's request to depose Palmer. Freeman's counsel made an additional request regarding Palmer's deposition at the conclusion of the hearing:

> One last thing is—I know this is going to come up. Can we take the—just because of the expense and all this involvement. I think this is, at least, hopefully, reasonable to you. Could we do the depositions in our office in Amar-

illo? ... At least, as far as their corporate reps and [Joshua] Palmer. It would save a fortune if we could do it in Amarillo rather than going off to Washington.

Relators assert that the trial court exceeded its authority by requiring Palmer to appear in Texas for his deposition. TEX.R.CIV.P. 199.2(b)(2) lists the locations where a witness's deposition may be taken:

A. The county of the witness's residence;

B. The county where the witness is employed or regularly transacts business in person;

C. The county of suit, if the witness is a party or a person designated by a party under Rule 199.2(b)(1);

D. The county where the witness was served with the subpoena, or within 150 miles of the place of service, if the witness is not a resident of Texas or is a transient person; or

E. Subject to the foregoing, at any other convenient place directed by the court in which the cause is pending.

There is no dispute that Palmer does not reside, work, or regularly transact business in Potter, Randall, or Nolan Counties. While Palmer is an employee of a party, Rule 199.2(b)(2)(C) does not permit his deposition to be taken in Nolan County because he has not been designated as a corporate representative under Rule 199.2(b)(1).

In *Wal–Mart Stores, Inc. v. Street,* 754 S.W.2d 153 (Tex.1988)(orig. proceeding), the Texas Supreme Court examined the parameters of Rule 199.2(b)(2)(E) which provides that a deposition may be taken at "any other convenient place." There, the trial court entered an order directing that the deposition of Sam Walton be taken in Fort Worth, Texas. While Fort Worth

was located in Tarrant County, Walton had not been designated a corporate representative. Furthermore, Walton did not reside, work, or regularly transact business in Tarrant County. The supreme court held that the trial court clearly abused its discretion by ordering Walton's deposition to be taken in Fort Worth. In reaching its holding, the court noted that nothing presented to the trial court supported any conclusion that it was reasonable or convenient for Walton to travel to Fort Worth for his deposition. The supreme court's holding indicates that "convenience" under the rule is to be determined from the perspective of the witness rather than the parties.

 The record does not reflect that it would be convenient for Palmer to be deposed in Amarillo, Sweetwater, or any other location in Texas. There is a reference in the transcript from the May 23 hearing that the trial court considered the order requiring Palmer to be deposed in Texas as the imposition of a discovery sanction against relators. While a trial court has wide latitude in imposing discovery sanctions, the sanctions must be just. *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913 (Tex.1991). The circumstances involving Palmer's deposition are very similar to the facts in *Wal–Mart Stores, Inc. v. Street*, supra, where the supreme court determined that the order requiring Sam Walton to be deposed in Texas constituted a clear abuse of discretion. *Wal–Mart Stores, Inc. v. Street*, supra at 155. A sanction which constitutes a clear abuse of discretion is not just. Relators' request for a writ of mandamus concerning the location of Palmer's deposition is conditionally granted.

### The Deemed Finding

 Finally, relators seek relief from the deemed finding of joint and several liability imposed by the trial court. Discovery sanctions are reviewable under the standards adopted by the Texas Supreme Court in *TransAmerican*. The supreme court recently revisited the *TransAmerican* standards in *Spohn Hospital v. Mayer*, 104 S.W.3d 878, 882 (Tex.2003):

> *TransAmerican* set out a two-part test for determining whether a particular sanction is just. First, there must be a direct nexus among the offensive conduct, the offender, and the sanction imposed. A just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender. The trial court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both.
>
> Second, just sanctions must not be excessive. In other words, a sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes, which include securing compliance with discovery rules, deterring other litigants from similar misconduct, and punishing violators. We require courts to consider less stringent sanctions and whether such lesser sanctions would fully promote compliance. (Citations omitted)

Discovery sanctions which inhibit presentation of the merits of the case are subject to heightened scrutiny. *Spohn Hospital v. Mayer*, supra at 882–83. The sanction at issue in this proceeding is a "case determinative sanction" because it inhibits the presentation of the merits of the case. Case determinative sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with

the rules. *Spohn Hospital v. Mayer*, supra at 882–83.

■ Freeman contends that the trial court's May 16 rulings constituted the imposition of lesser sanctions which justified the trial court's subsequent act of deeming the finding against relators. We disagree. The orders which the trial court entered on May 16 are in the nature of orders compelling discovery rather than the imposition of discovery sanctions. An order compelling discovery is not an attempt at a lesser sanction. *In re Polaris Industries, Inc.*, 65 S.W.3d 746, 753 (Tex.App.-Beaumont 2001)(orig. proceeding).

■ Our review of the record indicates that the case determinative sanction imposed in this case is excessive. The deemed finding was imposed as a sanction based upon relators' purported failure to produce information detailing the relationship between Freightliner and the Western Star entities. The May 16 rulings constituted the first order from the trial court compelling relators to produce this information over the objections which they lodged during the discovery process. The 3,000 pages of documents which relators produced on May 23 in response to the court's May 16 orders contain the following types of information regarding the relationship between Freightliner and the Western Star entities: (1) acquisition documents; (2) notifications to lessors and lenders detailing the acquisition; (3) press releases regarding the acquisition; and (4) documents detailing the corporate structure of the Western Star entities.[10] The trial court's entry of a case determinative sanction is therefore excessive in light of relators' efforts to at least partially comply with the trial court's order compelling discovery. We further note that the trial

court entered the finding of joint and several liability against relators on the theory that their corporate form is used as a sham to avoid corporate debts and liabilities. Freeman had only pleaded this theory for piercing the corporate veil six days prior to the May 23 order. Relators' request for a writ of mandamus regarding the deemed finding is conditionally granted.

*This Court's Ruling*

Western Star Trucks US, Inc.; Freightliner, LLC; and Western Star Trucks Sales, Inc.'s petition for writ of mandamus is conditionally granted. The trial court is directed to rescind its May 23, 2003, order directing Joshua Palmer to appear in Texas for a deposition and all previous orders to this effect. The trial court is further directed to rescind its May 23, 2003, order deeming the finding of joint and several liability. In the event these orders are not rescinded by August 13, 2003, the writ of mandamus shall issue.

---

10. The acquisition documents reveal a rather complicated transaction occurring under the laws of British Columbia, Canada.