**OLD REPUBLIC INSURANCE COMPANY, Appellant,**

v.

**EX–IM SERVICES CORP., EX–IM Group, Inc. and Refugio Gonzales, Jr., Appellee.**

No. 01–95–00364–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 22, 1996.

Rehearing Overruled March 21, 1996.

---

**394**

Kristinia Kerwin, Joanne Vorpahl, Houston, for appellant.

Gerard Swonke, Ellen Gerson, Houston, for appellees.

Before WILSON, COHEN and O'CONNOR, JJ.

## OPINION

WILSON, Justice.

In this case the appellant, Old Republic Insurance Company (Old Republic), appeals from the trial court's rendition of a take-nothing judgment n.o.v. in favor of the appellees, EX–IM Services Corporation (EX–IM Services), EX–IM Group, Inc. (EX–IM Group), and Refugio Gonzales, Jr. (Gonzales).

In two points of error, Old Republic argues the trial court erred in disregarding the jury findings that (1) Gonzales was the alter ego of Jetero International Services, Inc. (Jetero International), EX–IM Services, and EX–IM Group, and (2) a single business enterprise existed among Jetero International, Refugio Gonzales, Jr. d/b/a Jetero Services (Jetero Services), EX–IM Services, and EX–IM Group because sufficient evidence was presented to support the findings. We reverse and render judgment.

## Summary of facts

In its first amended petition, Old Republic brought claims against Jetero International, Jetero Services, EX–IM Services, and EX–IM Group for breach of contract and quantum meruit. Old Republic argued that the separate existence of these business entities should be disregarded.

At trial, Kathleen Dorman, a vice-president for Trade Insurance Services, Inc. (Trade Insurance), testified for Old Republic as to the background of the parties' dispute. Old Republic issues customs bonds to importers to secure duties owed on goods brought into the United States. Old Republic sold these bonds through its agent, Trade Insurance, to importers such as Jetero International. Gonzales owns 42.5 percent of outstanding Jetero International stock, and his brothers own the remaining shares. At that time, Jetero International performed freight forwarding and custom house brokerage. In February 1986, Gonzales resigned as an officer of Jetero International to work with an unrelated construction company. Gonzales retained his shares of Jetero International stock.

In June 1986, Old Republic issued a $30,000 bond to Jetero International. In March 1987, the United States Customs Service assessed duties of $17,832.11 on goods imported by Jetero International under that bond. That same month, Jetero International declared bankruptcy and subsequently did not pay the duties assessed. In May 1987, Gonzales filed an application to operate as a sole proprietorship d/b/a Jetero Services. Jetero Services performed freight forwarding, custom house brokerage, and construction management consulting. Less than one year later, in February 1988, Gonzales sent out a letter to his customers and vendors informing them:

> Effective immediately, Jetero has changed its name to EX–IM Services Corp. Our address, telephone, telex and fax will remain the same. We sincerely hope that we can continue our mutually beneficial relationship. Please change your records to reflect our new name, and advise if any additional information is required.... We believe that our name change and our ad-

ditional services will make us bigger and better than ever!

Trade Insurance received one of these letters, signed by Refugio Gonzales. Refugio Gonzales is the president of EX–IM Services and his wife, Santa Gonzales, is the sole shareholder. EX–IM Services also performs freight forwarding, custom house brokerage, and conducts an import-export business. Jetero International was not dissolved, and the bankruptcy proceeding was eventually dismissed in July 1988.

In November 1991, Gonzales' 18–year–old daughter, Dey Gonzales, formed EX–IM Group with herself as sole shareholder. EX–IM Group conducts export sales, custom forwarding, and custom house brokerage. Refugio Gonzales is the president of EX–IM Group and runs the business operations, and his brother Robert Gonzales is the vice-president and treasurer.

When Jetero International did not pay the amount owed on the March 1987 bond, the United States Treasury Department sent a formal demand letter to Old Republic seeking payment of $30,682.56 in November 1992. Old Republic paid the Treasury Department $28,489.20 to cover the amount due under the bond, reduced by prior claims it had already paid. Old Republic, through Trade Insurance, then sought payment from EX–IM Services for the amount owed on the bond, based on its receipt of the notification that "Jetero" had changed its name. Old Republic received no response to its letter.

Old Republic asserted its claim for repayment against Jetero International, Refugio Gonzales individually and d/b/a Jetero Services, EX–IM Services, and EX–IM Group, claiming the companies were operating as a single business enterprise and their corporate existence should be disregarded.

In December 1994, Old Republic obtained an interlocutory default judgment against Jetero International for the amount Old Republic paid on the bond plus interest, costs, and attorneys' fees. Old Republic's claims against Jetero International were then severed and the default judgment became final.

At trial, the jury found a single business enterprise existed among Jetero Internation-al, Jetero Services, EX–IM Services, and EX–IM Group, and found Gonzales was the alter ego of Jetero International, EX–IM Services, and EX–IM Group. The trial court granted the appellees' motion for judgment n.o.v. and rendered judgment that Old Republic take nothing on its claims.

**Single Business Enterprise**

We consider Old Republic's second point of error first because it is dispositive of their appeal. In their second point of error, Old Republic contends the trial court committed error in disregarding the jury's finding that a single business enterprise existed among Jetero International, Jetero Services, EX–IM Services, and EX–IM Group because legally sufficient evidence was presented to support that finding.

■ A trial court may render a judgment n.o.v. if there is no evidence to support one or more jury findings on issues necessary to liability. Tex.R.Civ.P. 301; *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). In determining a "no evidence" question, a reviewing court must consider only the evidence and reasonable inferences that tend to support the jury findings, disregarding all contrary evidence and inferences. *Best,* 786 S.W.2d at 671; *McDade v. Texas Commerce Bank, N.A.,* 822 S.W.2d 713, 717 (Tex.App.—Houston [1st Dist.] 1991, writ denied). If there is more than a scintilla of competent evidence to support the jury finding, the judgment n.o.v. will be reversed. *Navarette v. Temple Indep. Sch. Dist.,* 706 S.W.2d 308, 309 (Tex.1986); *McDade,* 822 S.W.2d at 717.

■ Texas courts have disregarded the corporate form when it is used as part of an unfair device to achieve an inequitable result, such as when a corporation is organized and operated as a mere tool or business conduit of another corporation, or when the corporate fiction is resorted to as a means of evading an existing legal obligation. *Castleberry v. Branscum,* 721 S.W.2d 270, 271–72 (Tex.1986). Under the "single business enterprise" doctrine, when corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose, each constituent corpora-

tion may be held liable for the debts incurred in pursuit of that business purpose. *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *see Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd.*, 740 S.W.2d 838, 844 (Tex.App.—Houston [1st Dist.] 1987, no writ) (reaffirming the soundness of the "single business enterprise" doctrine).

Some factors courts have considered in determining whether corporations have been maintained as separate entities include: common employees and offices; centralized accounting; payment of wages by one corporation to another corporation's employees; common business names; services rendered by the employees of one corporation on behalf of another corporation; undocumented transfers of funds between corporations; and unclear allocation of profits and losses between corporations. *See Paramount*, 712 S.W.2d at 536.

■ Jury question number two asked: "Do you find that a single business enterprise existed among Jetero International Services, Jetero Services, EX–IM Services, and/or EX–IM Group?" The jury was instructed to answer the question with a "yes" or "no" answer, and answered "yes." We must consider only the evidence presented to the jury that supported its finding of a single business enterprise among these entities.

Evidence was presented that these entities conducted similar import-export business activities and used similar names. Refugio Gonzales testified that after Jetero International went into bankruptcy, "I took my business and started Jetero Services." EX–IM Services later notified the customers of "Jetero" that it was simply continuing the same business operations under a new name and for some time at the same address. Gonzales, a shareholder and former officer of Jetero International, formed the d/b/a Jetero Services, acted as president of both EX–IM Services and EX–IM Group, and ran much of the business operations of Jetero Services, EX–IM Services, and EX–IM Group. Linda Mayes, the bookkeeper for Jetero International, testified she was also employed as bookkeeper for Jetero Services, EX–IM Services, and EX–IM Group. Robert Gonzales, vice president and treasurer of EX–IM Group, testified that when EX–IM Group was formed, "EX–IM Services quit doing business as EX–IM Services," and "[W]e started doing business as EX–IM Group."

Old Republic also presented evidence of the common use of one of its bonds by some of these entities. Kathleen Dorman testified that in 1986, some bonds not the subject of the instant case were sold to Jetero International. In 1987, Trade Insurance instructed Jetero International it was no longer authorized to use any of its bonds and asked Jetero International to return any unused bonds. However, in January 1988, Jetero Services imported goods under one of the bonds, despite the fact that it also was not authorized to use any of the unreturned bonds. Trade Insurance then sent a bill to Jetero International for the amount of the premium of the bond and was paid by check from EX–IM Services.

Viewing the evidence in the light most favorable to the jury's finding, we conclude Old Republic presented more than a scintilla of evidence to support the jury's finding that a single business enterprise existed among Jetero International, Jetero Services, EX–IM Services, and EX–IM Group. Therefore, we hold the trial court committed error in rendering a judgment n.o.v. on this finding, and we sustain Old Republic's second point of error. We reverse the judgment of the trial court, and render judgment for Old Republic.

■ When an individual is doing business under an assumed name, a judgment rendered against the unincorporated association is binding on the individual. *See* TEX.REV. CIV.STAT.ANN. art. 6135 (Vernon 1970); TEX. R.CIV.P. 28; *Holberg & Co. v. Citizens Nat'l Assur. Co.*, 856 S.W.2d 515, 517 (Tex.App.—Houston [1st Dist.] 1993, no writ). Because Jetero Services is a d/b/a or assumed name of Refugio Gonzales and not a corporation, Gonzales is liable for claims against and debts incurred by Jetero Services. Therefore, we do not proceed to consider Old Republic's first point of error concerning the jury's finding of alter ego.

We render judgment that Old Republic recover from the appellees jointly and severally:

(1) those amounts owed by Jetero International Services, Inc. to the appellant, Old Republic Insurance Company, as set out in the default judgment signed by the court below on January 12, 1994;

(2) $50,000 in attorneys' fees for trial and appeal to this Court as stipulated by the parties; and

(3) post-judgment interest at the maximum legal rate.