OLYMPIC FINANCIAL LTD.,
d/b/a Arcadia Financial
Ltd., Plaintiff,

v.

CONSUMER CREDIT CORPORATION, d/b/a Federated Super Stores, Dodge City–Tomball, Inc., d/b/a McCollum's Dodge City, McCollum Pontiac–Cadillac–GMC Truck, Inc., and McCollum Automotive Group, Inc ., d/b/a McCollum Chevrolet Oldsmobile GEO, Defendants.

Civil Action No. H–96–3896.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 25, 1998.

Donald L. Turbyfill, Devlin and Taylor, Houston, TX, for Olympic Financial Ltd.

Lana R. Dieringer, Leibman and Oesch, Houston, TX, for Tirefast, Inc.

Paul Robert Lawrence, Lawrence Baca & Donohue, Houston, TX, for Dodge City–Tom-

ball Inc., McCollum Pontiac–Cadillac–GMC, McCollum Automotive Group, Inc.

## MEMORANDUM OPINION AND ORDER

ATLAS, District Judge.

This consignment contract case is before the Court on Defendants' Motion for Partial Summary Judgment [Doc. # 56] ("Defendants' Motion") and Plaintiff's Cross–Motion for Partial Summary Judgment [Doc. # 69] ("Plaintiff's Motion"). Plaintiff Olympic Financial Ltd. d/b/a Arcadia Financial Ltd. ("Arcadia") alleges *inter alia* that Defendants Consumer Credit Corporation d/b/a Federated Super Stores ("Federated"), Dodge City–Tomball, Inc. ("Dodge"), McCollum Pontiac–Cadillac–GMC Truck, Inc. ("Pontiac"), and McCollum Automotive Group, Inc. ("Chevrolet") [1] are not operated as separate entities, but have integrated their resources to achieve a common business purpose such that they have merged into a single business enterprise ("Single Business Enterprise" claim). Federated and the Dealership Defendants respond that each is operated as a separate corporation and that, as a result, Plaintiff must establish liability as to each corporation individually. The Court has carefully reviewed the pleadings, the supporting evidence, and the applicable law. Based on this review, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's Single Business Enterprise claim.

## THE SUMMARY JUDGMENT STANDARD

The United States Supreme Court has held that a motion for summary judgment is properly granted unless there is evidence "on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 is an integral part of the Federal Rules of Civil Procedure, recognizing a party's right to demonstrate that certain claims have no factual basis and to have

those unsupported claims disposed of prior to trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant shows that there are no genuine issues of material fact, the burden is on the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial. *Texas Manufactured Housing Ass'n v. Nederland,* 101 F.3d 1095, 1099 (5th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass v. United Services Automobile Ass'n,* 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds,* 79 F.3d 1415 (5th Cir.1996) (*en banc*); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*).

Plaintiff has submitted the Affidavit of Arcadia representative Todd Johansen [Doc. # 70] ("Johansen Aff."). Plaintiff has also submitted the affidavit of its attorney [Doc. # 71] authenticating the attached deposition testimony of Mark McCollum, Joseph Vernon Grief ("Grief Dep."), and Billy Caudle ("Caudle Dep.").

## FACTUAL BACKGROUND

Federated, a seller of used motor vehicles, and Arcadia, a provider of purchase money financing for retail purchasers of motor vehicles, entered into an agreement for Federated to sell on a consignment basis vehicles which had been repossessed by Arcadia ("Consignment Agreement"). Pursuant to the Consignment Agreement, Federated would sell the repossessed vehicles and would remit to Arcadia the sales proceeds, less Federated's fee and any charges for refurbishment and repair work. Johansen Aff., at 2. Arcadia alleges that Federated failed to remit the sales proceeds and that Federated's corporate checks were frequently dishonored by the bank. Johansen Aff., at 3.

---

**1.** Dodge, Pontiac, and Chevrolet will be referred to collectively as "Dealership Defendants."

Arcadia also entered into a Master Dealer Agreement with each of the Dealership Defendants whereby Arcadia would purchase sales contracts arising from the sale of vehicles secured by a purchase money security interest. Johansen Aff., at 2–3.

## LEGAL ANALYSIS

### A. Single Business Enterprise

#### 1. Legal Standard and its Application to This Record

██ Under Texas law, when two or more corporations "are not operated as separate entities, but rather integrate their resources to achieve a common business purpose, each constituent corporation may be held liable for the debts incurred in pursuit of that business purpose." *Old Republic Insurance Co. v. Ex–Im Services Corp.*, 920 S.W.2d 393, 395–96 (Tex.App.—Houston [1st Dist.] 1996, no writ). The factors to consider in determining whether two or more corporations have been operated as a single business enterprise include whether the corporations had: (1) common employees; (2) common record keeping; (3) centralized accounting; (4) payment of wages by one corporation to another corporation's employees; (5) a common business name; (6) services rendered by the employees of one corporation on behalf of another; (7) undocumented transfers between corporations; (8) unclear allocation of profits and losses between the corporations; (9) the same officers; (10) the same shareholders; and (11) the same telephone number. *Beneficial Personnel Services of Texas, Inc. v. Rey*, 927 S.W.2d 157, 166 (Tex.App.—El Paso 1996), *judgment vacated and case remanded in light of settlement*, 938 S.W.2d 717 (Tex.1997); *Old Republic*, 920 S.W.2d at 396.

These factors can be grouped for ease of analysis:

*Common Employees; Payment of Wages by One Corporation to Another Corporation's Employees; Services Rendered by the Employees of One Corporation on Behalf of Another.*—In this case, Arcadia has presented evidence that each corporation had the same Chief Financial Officer, Joseph Vernon Grief. Arcadia also has presented evidence that each Defendant corporation used McCollum Management Company to handle the corporation's payroll. Finally, the evidence is uncontroverted that, at one point, a group of employees of Federated were transferred to Pontiac to perform "repair" and "make-ready" operations in connection with the consignment sale of the used vehicles.

*Common Record Keeping; Centralized Accounting; Undocumented Transfers of Funds Between Corporations.*—Arcadia has presented evidence of frequent transfers of funds made among the Defendant corporations to cover cash flow needs as they arose. Arcadia has not, however, presented evidence or argument that any company failed to maintain records of these transactions or that the records misrepresented the amounts of the transactions. Also, each company's record keeping and accounting were consistently separately maintained. There is no evidence that one corporation ever transferred funds to another company when the transferor needed the cash. Every transfer was properly documented on both corporations' books. No corporation became a long-term debtor or creditor to any of the other three companies.

*Common Business Name.*—The only similarity in the business names of the four Defendant corporations is that the names of two of the Dealership Defendants, McCollum Pontiac–Cadillac–GMC Truck, Inc. and McCollum Automotive Group, Inc., since they include the name "McCollum," the president of these corporations.

*Unclear Allocation of Profits and Losses Between Corporations.*—Plaintiff has presented no evidence that the allocation of profits and losses between the corporations was not clearly separated. To the contrary, Plaintiff's evidence shows that, based on the maintenance of each corporation's totally separate books, and the clear separation of profits and losses for each corporation, the corporations determined if and when transfers of funds were needed to be made or could be made.

*Same Officers; Same Shareholders.*—McCollum is the only common officer (President) and shareholder of the four Defendant corporations. Plaintiff has presented no evi-

dence of other common corporate officers or shareholders. Plaintiff states in its Motion that Billy Caudle was "Finance Director for the three McCollum Group dealerships and Federated." Plaintiff's Motion, at 13. During Caudle's deposition, counsel for Arcadia used the term "McCollum group" in his questioning. Yet when specifically asked, "So you were general manager, vice president, and finance director of Consumer Credit Corporation, of Federated, of the McCollum franchise dealerships or all of the above," Caudle answered, "Just Consumer Credit and the finance director part was just for the new car franchises." Caudle Depo., at 17.

*Same Telephone Number.*—There is no evidence that any two or more of the four Defendant corporations had the same telephone number.

### 2. *Analysis of Factors*

■ Arcadia's strongest evidence is that funds were transferred among the four Defendant corporations, that at one point a group of employees (an entire department) of Federated was transferred to Pontiac, and that Mark McCollum was a common shareholder and officer of all four corporations. The Court concludes that this is insufficient as a matter of law to establish that the four corporations were operating as a "single business entity."

Reported cases in which a "single business enterprise" claim has been successful involved facts demonstrating significantly stronger inter-corporate ties than those presented in this case. In *Old Republic,* 920 S.W.2d at 396, the corporate entities conducted the exact same business and used similar names. Jetero International filed for bankruptcy protection and its customers were used to start Jetero Services. EX–IM Services later notified the customers of Jetero Services that it was "simply continuing the same business operations under a new name and for some time at the same address." *Id.* EX–IM Group was subsequently formed and "EX–IM Services quit doing business as EM–IM Services" and "started doing business as EX–IM Group." *Id.*

In *Superior Derrick Services, Inc. v. Anderson,* 831 S.W.2d 868, 874 (Tex.App.—Houston [14th Dist.] 1992, writ denied), the two corporations had a common office, had common employees, had centralized accounting with one corporation having no bank account, had interlocking officers and shareholders, had wages and bills for one corporation paid by the other, and had inventory purchased by one corporation and used by the other.

In *Paramount Petroleum Corp. v. Taylor Rental Center,* 712 S.W.2d 534, 536 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.):

> The same shareholder owned all of the stock in both companies. The two companies operated from the same Houston office. They used the same telephone number and the same post office box. Both companies paid funds to Captain Jackson for repair work on the [vessel]. The employees of both companies referred to both companies as "Paramount." Petroleum transferred funds, with no ledger entries, to a checking account over which an employee of Steamship was signatory. The president of Steamship testified that assets of Petroleum were seized when the [vessel] was seized. All accounting for the two companies was performed at the Houston office by an employee paid by Petroleum. Finally, Petroleum failed to produce, in response to discovery requests, any corporate records of either corporation.

Based on a careful review of the undisputed evidence and on consideration of all the relevant factors and applicable case law, the Court concludes that Arcadia has failed to present sufficient evidence to raise a fact issue regarding whether the four Defendant corporations are being operated as a single business entity.

### B. *Requirement of Actual Fraud*

■ Even were the Court to conclude that a fact issue prevented summary judgment in favor of Defendants on whether the corporations constituted a single business entity, joint liability could be imposed only if there is also a finding of actual fraud. TEX.BUS. CORP.ACT art. 2.21(A)(2); *NorDar Holdings, Inc. v. Western Securities (USA) Ltd.,* 969

F.Supp. 420, 422 (N.D.Tex.1997). Arcadia has failed to raise a genuine issue of material fact as to the requirement of actual fraud.

In his affidavit submitted in connection with Plaintiff's Motion, Johansen states that "Federated represented to Arcadia that the proceeds from the sale of Consigned Vehicles would be held in trust for the benefit of the repossessed customer, and remitted to Arcadia for application to the repossessed customers' accounts" and that "Arcadia was assured by McCollum that Federated was handling the sales proceeds properly." Johansen Aff., at 3–4. Johansen also states in his affidavit that "McCollum represented to Arcadia that, if the work was performed by the McCollum Group, the work would be of better quality, because the workers and the repair facilities at the franchise dealerships were of a higher standard." Johansen Aff., at 5. These are the only allegations of direct representations made by McCollum or any other agent of the corporations.[2]

Plaintiff correctly notes that a misrepresentation by a consignee to a consignor can be fraudulent. *Dunn v. Menassen,* 913 S.W.2d 621, 625 (Tex.App.—Corpus Christi 1995, writ denied). In *Dunn,* however, the fraudulent misrepresentation involved a statement by the seller that he could only sell the merchandise for $1 per case, when it was actually sold for $3 per case. The court in *Dunn* further held that the seller's refusal to account for the product sold or to permit the consigning party to retrieve its property may establish a breach of the consignment agreement, but does not constitute fraud. *Id.* "It is only when the failure to perform an act in the future is coupled with intent not to perform at the time of the promise that fraud occurs." *Id.* By comparison, the generalized promise to handle the funds properly or that Federated would hold the proceeds in "trust" are far too general to support a claim for fraud. At best, Plaintiff Arcadia has stated a

breach of contract claim, like Plaintiff in *Dunn.*

■ Plaintiff's attempt to impose a fiduciary duty on the Defendant corporations is without merit. Plaintiff correctly cites *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256, 261 (1951), for the proposition that where one person trusts and relies on another, a confidential relationship can give rise to a fiduciary duty, but there is no evidence in this case of a confidential relationship. Arcadia's reliance on Federated to comply with the terms of the Consignment Agreement, including proper application of the money received from the disposition of the consigned vehicles, is insufficient as a matter of law to create a confidential or fiduciary relationship. *Crim Truck & Tractor Co. v. Navistar International Transportation Corp.,* 823 S.W.2d 591, 594 (Tex.1992).

### CONCLUSION

Plaintiff has failed to present evidence sufficient to raise a genuine issue of material fact on either the single business entity aspect or the actual fraud aspect of its Single Business Enterprise claim. As a result, Defendants are entitled to summary judgment on that claim. It is hereby

**ORDERED** that Defendants' Motion for Partial Summary Judgment [Doc. # 56] is **GRANTED** and Plaintiff's Cross–Motion for Partial Summary Judgment [Doc. # 69] is **DENIED.**

The case remains scheduled for docket call at 4:00 p.m. on Friday, March 13, 1998.

---

**2.** Johansen also states in his affidavit that "[t]he representations of McCollum and the management of Federated that the sale proceeds were being used only to discharge the obligations of Federated to Arcadia under the Consignment Agreement was false" and that "[t]he representations of McCollum and the management of Federated that the workers performing the repair and reconditioning would be factory trained employees of the McCollum Group franchise stores were false." There is no evidence presented in the affidavit or otherwise, however, that these specific statements were made. Indeed, the statements actually attributed by Johansen to McCollum are significantly different from these "representations."