In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00353-CV
_____

**HOA DAO, Appellant**

**V.**

**MARYLAND CASUALTY COMPANY AND CRAIG RAUS, Appellees**

_____

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 10-07-07575 CV**

_____

**MEMORANDUM OPINION**

This is an appeal from the trial court's order imposing sanctions for discovery abuse. The trial court struck the pleadings of Hoa Dao and Keystone Management and dismissed with prejudice their lawsuit against Maryland Casualty Company (MCC) and Craig Raus. On appeal, Dao and Keystone contend that the sanctions imposed by the trial court are not justified under the precedent established in *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913, 917-20 (Tex. 1991) (orig. proceeding). We reverse and remand.

1

## I. Procedural Background

On July 16, 2010, Dao filed suit against MCC and Raus in the Ninth District Court of Montgomery County. Therein, Dao alleged that MCC issued a policy covering the property located at 2218 Northpark Drive, Kingwood, Montgomery County, Texas (the "Property"). Dao alleged that on September 12, 2008, Hurricane Ike caused windstorm damage to the Property. Dao alleged that she filed a claim with MCC under the policy for damage to the Property. Dao alleged that MCC assigned Raus to adjust her claim and together, they wrongfully denied her claims under the policy. Dao alleged a number of causes of action against MCC, including: (1) unfair settlement practices pursuant to the Insurance Code; (2) common law fraud; (3) non-prompt payment of claims pursuant to the Insurance Code; (4) breach of contract; and (5) breach of duty of good faith and fair dealing. Dao alleged Raus' conduct constituted an unfair settlement practice, fraud, and breach of the duty of good faith and fair dealing. We note the first amended pleading is not part of the appellate record, but the record supports that Dao amended her petition in 2010 to add Keystone Management as a plaintiff to the lawsuit.

On November 22, 2010, defendants sent interrogatories, requests for admission, requests for production, and a request for disclosure to Dao. On

2

December 27, 2010, the trial court entered a docket control order, setting the case for trial March 21, 2011. Pursuant to the docket control order, the discovery deadline was thirty days before trial. Because of the holiday season, Dao asked for and received permission to file her objections and responses to discovery on January 4, 2011. On January 4, 2011, Dao responded to the interrogatories, requests for production, and requests for admission. On April 1, 2011, defendants sent a letter to plaintiffs indicating that Dao's discovery responses were inadequate, incomplete, and needed supplementation. In the letter, defendants provided numerous examples of deficiencies in the responses.

In the meantime, on March 1, 2011, the trial court granted the parties' joint motion for a continuance and reset the case for trial on August 29, 2011. The trial court issued a new docket control order setting July 15, 2011 as the new discovery deadline.

On April 14, 2011, defendants filed a motion with the court seeking to compel Dao to supplement her responses to the written discovery. On May 24, 2011, the trial court granted defendants' motion to compel adequate written discovery responses and ordered Dao to respond to defendants' discovery within seven days. On May 31, 2011, Dao filed a motion to reconsider the trial court's order granting defendants' motion to compel.

3

On July 18, 2011, the trial court denied Dao's motion to reconsider the court's order compelling discovery responses and Dao's motion to file an untimely response. The trial court overruled Dao's objections to defendants' first set of interrogatories and requests for production. The trial court affirmed its prior order compelling discovery responses.

While the motion is not in the record, the record before us supports that defendants filed a motion for continuance of the trial setting and complained that plaintiffs had not complied with the trial court's order and had failed to produce documents responsive to such order. On August 4, 2011, plaintiffs' responded to defendants' motion for continuance and for entry of an amended docket control order. In plaintiffs' response, plaintiffs contested defendants' claims that plaintiffs had not fully complied with the trial court's orders. Specifically, plaintiffs maintained that they had complied with all defendants' requests for production by producing all requested documents in plaintiffs' custody and control, including documents relating to the maintenance and repair records prior to Hurricane Ike; communications from tenants; communications, estimates, invoices, opinions, reports, appraisals, and photographs from contractors and consultants; and, documents related to the Property before Hurricane Ike.

4

On August 5, 2011, the trial court held a hearing on defendants' motion for continuance and, at the same time, heard a motion filed by plaintiffs' counsel for withdrawal as counsel of record for plaintiffs. Dao opposed her counsel's request to withdraw, but indicated she did not object to defendants' request for a continuance and asked the court "to take control of this case and set a firm [trial] date before 2011 year end[.]" At the hearing, plaintiffs' counsel (at the time seeking withdrawal) indicated that he had represented Dao for approximately one year, that communications with her had "become very difficult[,]" and that representing Dao had become "unreasonably difficult." The court decided not to rule on either motion and explained to the parties that the administrative judges planned to "put a hold on all the Ike cases and transfer them into one particular court and then that judge will handle all of the discovery issues" and pretrial issues. On August 9, 2011, the trial court entered an order indefinitely abating the case. However, on October 25, 2011, over plaintiffs' objections, the trial court granted plaintiffs' attorney's motion to withdraw as attorney of record.

Plaintiffs eventually obtained new legal counsel. On March 19, 2012, plaintiffs' second attorney supplemented Dao's discovery responses. The letter accompanying the supplement states, "[P]lease find documents Bates stamped #HD00001 to #HD000172." The letter further states "[b]ecause I cannot tell

exactly where the Bates numbers stopped with respect to documents produced to you by my client's previous counsel, I decided to just start over." The letter explains that the supplementation includes an appraisal of the Property as of August 3, 2007 to respond to defendants' request for documents related to the condition of the Property before Hurricane Ike. The letter also states that counsel will forward any additional responsive documents if counsel determines they exist. Defendants deposed Dao on May 16, 2012. Dao produced a number of documents to defendants at her deposition. According to a letter Dao sent to the trial court, her attorney requested to withdraw as plaintiffs' counsel immediately after her deposition. Thereafter, plaintiffs obtained new legal counsel. On August 23, 2012, plaintiffs' attorney further supplemented plaintiffs' document production.

On December 18, 2012, the administrative judges in Montgomery County transferred plaintiffs' case to the 359th District Court of Montgomery County. On February 13, 2013, the trial court entered a new scheduling order, setting trial for November 4, 2013, and a new discovery deadline of August 6, 2013.

On March 22, 2013, plaintiffs' third attorney filed a motion to withdraw as counsel of record. Counsel indicated that the request to withdraw was unopposed and being filed because of "long standing issues concerning time constraints and additional issues regarding Plaintiffs' and counsel's views as to ongoing legal

representation." On April 3, 2013, plaintiffs, acting pro se, filed a letter with the trial court indicating they were opposed to the court granting counsel's request to withdraw from the case until they could secure new counsel.

On April 12, 2013, defendants filed a motion to compel Dao's compliance with the trial court's May 24, 2011 order compelling adequate responses.[1] Defendants also sought sanctions. In their motion to compel, defendants alleged that the information and documents that they had requested Dao provide were "necessary to properly evaluate Plaintiffs' alleged damages." Defendants explained that between January 2012 and May 2012, they made numerous written requests to plaintiffs' counsel seeking the following:

> (a) maintenance and repair records prior to Hurricane Ike, (b) communications from tenants indicating that they were vacating the property due to damage from Hurricane Ike, (c) other documents relevant to Plaintiffs' business interruption claim, (d) communications, estimates, invoices, opinions, reports, appraisals, and photographs from contractors and consultants who inspected or examined the property after Ike, (e) documents reflecting the corporate structure of Plaintiff Keystone Management, which is owned by Ms. Dao, and (f) documents related to the condition of property prior to Ike, among other items.

---

[1]Defendants' motion to compel requested the trial court to compel Dao's compliance with the court's May 24, 2011 and July 18, 2011 orders. In their motion, defendants describe both orders as orders compelling discovery; however, the July 18, 2011 order did not, in and of itself, order Dao to comply with defendants' discovery. As explained above, the July 18, 2011 order denied Dao's motion for reconsideration and upheld the court's May 24, 2011 order.

Defendants argued that Dao failed to produce any of the requested documentation until her deposition on May 17, 2012. According to defendants' motion, Dao had identified additional responsive documents during her deposition and had not produced those documents to defendants. According to defendants, because there were so many outstanding documents, they were required to postpone Dao's deposition until Dao produced the requested documents. Defendants asked the court to compel Dao to supplement her discovery responses and document production within seven days.

Defendants also asked the trial court to strike plaintiffs' pleadings and dismiss their claims with prejudice "[i]n light of [Dao's] prolonged and blatant disregard of the [c]ourt's prior discovery Orders, as well as her general refusal to cooperate in the discovery process[.]" As an alternative to striking her pleadings, defendants asked the court to order Dao to pay defendants' reasonable expenses and attorneys' fees caused by her failure to respond adequately to discovery, or other just orders regarding Dao's failure to comply with the rules of discovery.

On April 15, 2013, the trial court granted the motion to withdraw filed by plaintiffs' third attorney. On April 24, 2013, plaintiffs, again acting pro se, filed a verified letter with the trial court to respond to defendants' motion to compel. In their letter, plaintiffs argued that their first attorney filed a response to defendants'

8

first motion to compel and therein indicated that "defendants had all requested documents which are in Plaintiff's custody and control that relate to this lawsuit[.]" Plaintiffs further argued that in March 2012 her counsel again "provided all requested documents to include all additional requested documents a [second] time." Plaintiffs contended that when defendants made another request in late May and July 2012 for documents, her third counsel responded and produced additional documents and indicated that "'all other requests have either been adequately answered through previous document production, or responsive materials simply do not exist at this time[.]'" Plaintiffs maintained that defendants brought the motion to compel in bad faith to take advantage of plaintiffs while they were without legal counsel. Plaintiffs argued sanctions were inappropriate because plaintiffs had produced all the requested documents in their possession related to Hurricane Ike.

Defendants filed a reply to plaintiffs' response and argued that plaintiffs had a pattern of conduct as demonstrated from their numerous other lawsuits in Harris County, wherein they change counsel whenever key deadlines or trial dates approach. Defendants attached exhibits from other lawsuits to support their contentions.

Plaintiffs asked the court to continue defendants' motion to compel and motion for sanctions until they could obtain new legal counsel. The trial court granted plaintiffs a number of continuances to give plaintiffs time to obtain legal counsel. The trial court ultimately heard this matter on July 16, 2013, and entered judgment on July 18, 2013, granting defendants' motion for sanctions, striking plaintiffs' pleadings, and dismissing all plaintiffs' claims with prejudice to refiling. The trial court's order recited findings of fact to support its judgment.

Thereafter, plaintiffs secured new legal counsel and filed a motion for new trial seeking to set aside the trial court's judgment. Therein, plaintiffs contend that they also supplemented their discovery responses with over one thousand pages of documents. Defendants responded that plaintiffs had previously produced the majority of the "supplemented" documents and had still failed to produce the documents Dao identified in her deposition. Plaintiffs' motion was denied by operation of law. Dao filed a notice of appeal.

## II. Keystone Management

In their first issue, appellants contend that the trial court erred in sanctioning Keystone and dismissing its claims with prejudice when defendants' motion to compel did not seek relief directly against Keystone. Appellees contend that Keystone is Dao's doing-business-as name, and as such, Dao and Keystone are the

same. Appellants concede this point in their reply brief when they state, "Appellees are correct in contending that Hoa Dao and Keystone Management are one and the same." The evidence in the record supports that Dao was doing business under the assumed name of Keystone Management. Therefore, under the facts contained in this record, we conclude that Dao and Keystone are the same legal entity and the trial court did not err in entering judgment against Keystone and Dao. *See Salyers v. Tex. Workers' Comp. Ins. Fund,* No. 03-03-00011-CV, 2003 WL 22024670, at *2 (Tex. App.—Austin Aug. 29, 2003, pet. denied) (mem. op.) ("Because they do not enjoy the protection of corporate status, individuals who do business as an unincorporated entity are personally liable for the entity's obligations."); *Old Republic Ins. Co. v. EX-IM Servs. Corp.*, 920 S.W.2d 393, 396 (Tex. App.—Houston [1st Dist.] 1996, no writ) (stating that when a judgment is rendered against an individual doing business as an unincorporated association that judgment is binding on the individual); *see also* Tex. R. Civ. P. 28 ("Any partnership, unincorporated association, private corporation, or individual doing business under an assumed name may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right[.]"). We overrule appellants' first issue.

## III. Discovery Sanctions

In their second issue, appellants contend the trial court erred in granting defendants' motion to compel and for sanctions.

### A.    Standard of Review

We review a trial court's imposition of discovery sanctions for an abuse of discretion. *TransAmerican*, 811 S.W.2d at 917. A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We review the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's alleged discovery abuse. *U.S. Fid. & Guar. Co. v. Rossa*, 830 S.W.2d 668, 672 (Tex. App.—Waco 1992, writ denied). In assessing sanctions for discovery abuse, the trial court may consider everything that has occurred during the litigation. *Berry-Parks Rental Equip. Co. v. Sinsheimer*, 842 S.W.2d 754, 757 (Tex. App.—Houston [1st Dist.] 1992, no writ) (citing *Downer*, 701 S.W.2d at 241).

When the trial court includes findings of fact in its sanctions order, we do not give those findings of fact the same deference as fact-findings made by a trial judge after a full trial on the merits where the judge serves as the fact finder. *In re Polaris Indus., Inc.*, 65 S.W.3d 746, 750 (Tex. App.—Beaumont 2001, no pet.);

12

*see also Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992). However, we are required to view any conflicts in the record in the light most favorable to the trial court's ruling, and resolve all inferences in favor of the trial court's judgment. *Finley Oilwell Serv., Inc. v. Retamco Operating, Inc.*, 248 S.W.3d 314, 319 (Tex. App.—San Antonio 2007, pet. denied).

**B. Discovery Sanctions**

It is within the trial court's discretion to impose sanctions for discovery abuse. *See* Tex. R. Civ. P. 215.1, 215.2, 215.3. Rule 215.2 allows a trial court to impose a number of sanctions, including disallowing further discovery; charging certain expenses, costs, or attorney's fees of one party against the offending party; ordering certain facts to be established as true; limiting a party's ability to defend against or bring certain claims; striking pleadings or parts of pleadings; or finding a party in contempt of court. Tex. R. Civ. P. 215.2(b). A trial court is not limited to the list of sanctions specifically identified in Rule 215.2. *Braden v. S. Main Bank*, 837 S.W.2d 733, 740 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

For the trial court to impose sanctions, it must first determine that the complaining party proved that the alleged offending party failed to produce a document within its possession, custody, or control. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993). MCC produced deposition testimony

13

from Dao indicating that Dao was in actual possession of documents responsive to discovery. For example, Dao testified that she had a box at her office containing records of the building's history. She testified that the prior owner had some repairs made to the building in 2007 and 2008, including roof repairs. Dao was unable to testify regarding the specifics of the repairs performed to the building prior to her purchase of the building. She indicated she needed to look in the box of records at her office containing the building's history to confirm what work was actually performed.

In her deposition, Dao also testified that she possibly had documentation of tenant complaints made while she managed the property, but she was not certain she actually possessed such documentation. However, Dao testified that after her anchor tenant vacated the building, plaintiffs started maintaining a written log of all the complaints being made about the building. She testified that she kept the "maintenance log" at her office. She testified that after her anchor tenant left, she started having tenants complete complaint forms. She testified that she possessed written communications from other tenants concerning their decision to leave the building.

Dao also testified that she possessed email correspondence from the public adjuster, but indicated that she did not have a copy of his report. Finally, during the

14

deposition, Dao's legal counsel agreed to give defendants a copy of his fee agreement with plaintiffs.

In correspondence defendants sent to plaintiffs after Dao's deposition, defendants identified eight categories of documents that Dao allegedly testified that she maintained, including (1) historical building maintenance/repair records; (2) maintenance and repair records for the building from August 2007 to the present; (3) tenant complaints (maintenance/leak log); (4) communications with former tenants regarding their respective lease renewal negotiations, move-outs, and "resulting loss rents" to plaintiffs; (5) reports, estimates, notes, photographs, and fee agreements from public adjuster; (6) Dao and Keystone's fee agreement with counsel; (7) calendar and notes reflecting meetings and calls with defendant Raus and the public adjuster; and (8) e-mail correspondence with the public adjuster, tenants, prospective tenants, and roofers concerning the building condition and lease negotiations, as well as roofing proposals.

In a letter to the trial court dated June 20, 2012, Dao, acting pro se, notified the court that her second attorney presented her for deposition on May 16, 2012, and due to "[s]ome mysterious mishap" that occurred during the deposition, her second attorney immediately requested withdrawal as her counsel of record after

the deposition. There is no further explanation in the record indicating the reasons for the requested withdrawal.

On August 23, 2012, plaintiffs' third attorney sent the following correspondence to defendants:

> I have received and reviewed your correspondence in which you had requested additional materials from my client. In that regard, please find the attached materials, which respond to your request numbers 1, 2, 3, and 8. Based upon our review of the file, as it currently exists, any and all other requests have either been adequately answered through previous document production, or responsive materials simply do not exist at this time.

Defendants continued to assert that Dao failed to produce all documents in her possession and eventually filed the second motion to compel and first motion for sanctions with the court.

At the hearing on defendants' motion to compel compliance with the May 24, 2011 order and motion for sanctions, Dao appeared pro se. She explained to the court that she was in the process of finalizing a retainer agreement with new counsel. During the hearing, defendants represented to the trial court that Dao produced some new documents about fifteen to twenty minutes after her deposition began. Defendants told the trial court that at this point in time, Dao's counsel "was very apologetic" and told defendants that he had been asking Dao for the documents and had just learned they existed two days before the deposition.

16

Defendants informed the trial court that this exchange was part of Dao's deposition transcript, which was attached to their motion. However, we note that the portion of the record cited by defendants as allegedly evidencing this exchange is not part of the appellate record. Defendants argued that the issue is not with Dao's attorneys, who were all "professional, courteous, [and] cooperative." Defendants argued that previous counsel was no longer representing Dao "because they were equally frustrated with [Dao.]"

The trial court specifically asked Dao at the hearing if she had answered the discovery in full and Dao responded that she had. Relying on Dao's deposition testimony, defendants responded that they did not believe Dao's assertion to be true. Dao maintained to the trial court that she had produced everything. The trial court asked Dao where the documents were that she identified in her deposition, and Dao responded that based on correspondence she had read from her former counselors to defendants, those documents had already been produced to the defendants. The trial court obviously rejected Dao's assertions, and found that Dao failed to produce the documents she had identified in her deposition.

The evidence supports the trial court's finding that "Plaintiffs have failed to produce all responsive documents in their possession, including, by way of example, maintenance/leak logs[.]" The trial court is in the best position to judge

Dao's credibility with regard to her attempts to explain delays and her unresponsiveness to discovery. *See McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 199 (Tex. App.—Austin 2005, pet. denied). Because we defer to the trial court's firsthand assessment of the parties' credibility, we do not find the trial court abused its discretion in determining that discovery abuse has occurred.

The trial court then found that plaintiffs' failure to produce all responsive documents warranted court sanctions and struck all of plaintiffs' pleadings and dismissed plaintiffs' claims with prejudice pursuant to the court's authority under Rule 215.2 of the Texas Rules of Civil Procedure.[2] We must next determine whether the trial court's sanctions were just.

---

[2] Appellees further assert that because appellants have not challenged any implied findings that could support the trial court's judgment under the court's inherent authority, we should summarily affirm the judgment based on the concept of unassigned error. "Texas courts have the inherent power to sanction for an abuse of the judicial process that may not be covered by any specific rule or statute." *Island Entm't Inc. v. Castaneda*, 882 S.W.2d 2, 5 (Tex. App.—Houston [1st Dist.] 1994, writ denied). "Assessing sanctions under the trial court's inherent powers requires a two-step process." *Kings Park Apartments, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 101 S.W.3d 525, 541 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). First, the court must rely upon the rules and statutes that expressly authorize sanctions. Second, in applying its inherent power to impose sanctions, the trial court must make factual findings to determine whether there is some evidence that the conduct complained of significantly interfered with the court's legitimate exercise of its core functions. *Id*. The subject order of the trial court is clear that the trial court relied upon its authority to enter sanctions pursuant to Rule 215.2 of the Texas Rules of Civil Procedure.

18

## C. Sanctions Must Be Just

A court order striking pleadings is commonly referred to as a "death-penalty sanction." *See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 179 (Tex. 2012). Although the trial court has the discretion to impose sanctions, the sanctions it chooses to impose must be just. *TransAmerican*, 811 S.W.2d at 917; *see also* Tex. R. Civ. P. 215.2(b). Whether the trial court imposed a just sanction is measured by two standards. *TransAmerican*, 811 S.W.2d at 917. First, the sanctions must bear a direct relationship to the offensive conduct. *Id*. Second, the sanctions must not be excessive. *Id*.

## 1. Direct Relationship

A just sanction is directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003); *TransAmerican*, 811 S.W.2d at 917. "The trial court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both." *Spohn Hosp.*, 104 S.W.3d at 882; *TransAmerican*, 811 S.W.2d at 917. "[T]he sanctions the trial court imposes must relate directly to the abuse found." *TransAmerican*, 811 S.W.2d at 917. According to appellants, the trial court failed to determine whether the offensive conduct was attributable to counsel, to the

19

party, or to both. However, the trial court's order belies this argument. The trial court specifically found as follows:

> Plaintiffs, and not Plaintiffs' various attorneys since November 2010, are responsible for the discovery abuse, as the pattern of egregious conduct remained unchanged while Plaintiffs have acted *pro se* and while represented by three different law firms. Further, through each representation, it was ultimately within the exclusive province of Plaintiffs to provide the documents at issue to Plaintiffs' counsel and/or to Defendants. Plaintiffs' counsel could not provide the documents to Defendants unless and until Plaintiffs furnished the same to their counsel, which Plaintiffs refused to do.

The trial court concluded that there is a direct relationship between plaintiffs' conduct and the sanction of dismissal because plaintiffs' conduct "has frustrated Defendants' legitimate attempts to define Plaintiffs' causes of action, explore the bases for Plaintiffs' claims and alleged damages, and investigate potential defenses."

In her appellate brief, Dao argues that her failure to respond properly to discovery was attributable to her legal counsel and not to her. The record supports that at least Dao's initial failure to comply with the trial court's order compelling discovery was attributable to her counsel's failure and not her own. In the motion for reconsideration filed by plaintiffs after the trial court granted the first motion to compel, counsel stated that he did not file a response to defendants' motion to compel and was unaware of the seven-day deadline set by the trial court for Dao's

supplementation. In the motion, plaintiffs' counsel took full responsibility for the omission and asked the court for permission to file a late response. The motion for reconsideration also stated that in conjunction with filing the motion for reconsideration, Dao was supplementing her discovery responses to many of defendants' discovery requests at issue in the motion to compel.

During the hearing on the second motion to compel and motion for sanctions, Dao asked for additional time, specifically, "part of the day" to confer with her former counsel to determine what documents were not produced before she further supplemented the record. The trial court told Dao that because of Dao's past behavior the court could not trust Dao and that Dao could "take it for a given that they did not produce everything." Dao indicated that the court could sanction her if she did not respond as she stated she would.

## 2. Excessiveness of Sanction

When a trial court imposes a sanction for discovery abuse, the sanction should be no more severe than necessary to satisfy its legitimate purposes. *TransAmerican*, 811 S.W.2d at 917. The legitimate purposes of discovery sanctions are to secure compliance with the discovery rules, deter other litigants from abusing the discovery rules, and punish parties who violate the discovery rules. *Chrysler Corp.*, 841 S.W.2d at 849; *see also Tex. Integrated Conveyor Sys.,*

21

*Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 384 (Tex. App.—Dallas 2009, pet. denied); *Response Time, Inc. v. Sterling Commerce (N. Am.), Inc.*, 95 S.W.3d 656, 659-60 (Tex. App.—Dallas 2002, no pet.). Therefore, courts must first consider the availability of less stringent sanctions to determine whether such lesser sanctions would fully promote compliance, deterrence, and discourage further abuse. *Chrysler Corp.*, 841 S.W.2d at 849; *TransAmerican*, 811 S.W.2d at 917. "Case determinative sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules." *GTE*, 856 S.W.2d at 729. We give no deference to a trial court's conclusory statement that lesser sanctions would have been ineffective when the record does not include evidence to support this conclusion. *See id.*; *see also Spohn Hosp.*, 104 S.W.3d at 883 ("[T]he record should contain some explanation of the appropriateness of the sanctions imposed.").

The imposition of the death-penalty sanction is limited by constitutional due process and therefore, "ought to be the exception rather than the rule." *TransAmerican*, 811 S.W.2d at 917, 919. "Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack

merit." *Id*. at 918; *see Hammond Packing Co. v. State of Ark.*, 212 U.S. 322, 351 (1909) ("[T]he preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense."). If, after the imposition of lesser sanctions, a party continues to refuse to produce material evidence, the court may presume that an asserted claim or defense lacks merit and take action to dispose of it. *TransAmerican*, 811 S.W.2d at 918. However, "[s]anctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Id*. Even when a party has demonstrated "flagrant bad faith[,]" "lesser sanctions must first be tested to determine whether they are adequate to secure compliance, deterrence, and punishment of the offender." *Chrysler Corp.*, 841 S.W.2d at 849. The Texas Supreme Court has emphasized the continued validity of the rule that generally lesser sanctions should be tested first. *Cire v. Cummings*, 134 S.W.3d 835, 842 (Tex. 2004); *Hamill v. Level*, 917 S.W.2d 15, 16 n.1 (Tex. 1996).

In their brief, appellants contend that the trial court abused its discretion in granting the death-penalty sanction and at most, the trial court should have signed a new order to compel responses or imposed some lesser sanction. Appellants also

23

argue that the trial court's sanctions were excessive because the record does not justify a presumption that appellants' claims lack merit.[3]

While the trial court did attempt to accommodate plaintiffs' efforts to retain new counsel, we note that the first time the trial court considered sanctions for discovery abuse occurred at a time when plaintiffs were not represented by counsel. From the record, it is apparent that Dao does not communicate well using the English language. In its order, the trial court includes statements that its sanctions were not excessive because plaintiffs' conduct was exceptional and egregious and that lesser sanctions would not promote plaintiffs' compliance. The trial court also noted that it considered lesser sanctions, but found the sanction of dismissal the only viable choice. The court reasoned that lesser sanctions would be ineffective because plaintiffs have refused to comply with defendants' discovery requests even after two court orders and defendants having filed a motion requesting death-penalty sanctions. The trial court concluded that plaintiffs' conduct justifies the presumption that plaintiffs' claims lack merit. In its findings of fact, the court indicated that plaintiffs' flagrant behavior was demonstrated

---

[3]Appellees argue that appellants failed to properly brief their argument and thus, waived any error related to the presumption of "meritlessness[.]" However, appellants identified and applied relevant case law sufficiently to meet the standard under the rules of appellate procedure. *See* Tex. R. App. P. 38.1.

24

when Dao "testified that she possesses many documents responsive to Defendants' discovery made the subject of the Court's May 24, 2011 and July 18, 2011 Orders."

In *Cire*, the Court found the facts of the case to be exceptional and concluded it was within the trial court's discretion to determine that plaintiff deliberately destroyed dispositive evidence thereby warranting the imposition of death-penalty sanctions. 134 S.W.3d at 841. The Court explained that the trial court's order not only noted that lesser sanctions would be ineffective, but also "contain[ed] an extensive, reasoned explanation of the appropriateness of the sanction imposed, demonstrating that the trial court considered the availability of less stringent sanctions[.]" *Id*. at 842. The trial court's order noted that lesser sanctions would be ineffective because plaintiff concealed or destroyed critical evidence and plaintiff had refused to pay a previously ordered small monetary sanction. *Id*. at 841-42. The trial court also noted that monetary sanctions could not cure plaintiff's wrongdoing of destroying evidence. *Id*. at 841. The Court explained that ordinarily the trial court would be required to test the effectiveness of lesser sanctions, but "because of the egregious conduct and blatant disregard for the discovery process . . . including the violation of three court orders ordering production of the audiotapes," the death-penalty sanctions were clearly justified.

25

*Id.* at 842. The Court held that "striking pleadings is a harsh sanction that must be used as a last resort after the trial court has considered lesser sanctions, and that in all but the most egregious and exceptional cases, the trial court must test lesser sanctions before resorting to [death-penalty] sanctions." *Id.* The Court further held that in cases of "exceptional misconduct" the trial court is not required to test the lesser sanctions before striking a party's pleadings so long as the record reflects that the trial court considered the lesser sanctions first and the party's conduct justified the presumption that plaintiff's claims lack merit. *Id.* In such cases, the trial court is required to "analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed." *Id.* In *Cire*, the Court found the facts in that case represented an exceptional circumstance, "where the only objective evidence that would have supported or disproved [plaintiff's] claims was deliberately destroyed after the trial court thrice ordered it produced" and that such "intentionally egregious behavior" warrants the death-penalty sanction. *Id.* at 843.

In contrast to the *Cire* case, there is no evidence in this case that appellants have destroyed or tampered with relevant evidence. At most, the record reflects that appellants failed to comply fully with appellees' discovery requests and failed to comply with the trial court's May 24, 2011 order compelling responses. We do

not find this behavior to be "exceptional misconduct," such that the trial court is not required to test the lesser sanctions before striking a party's pleadings. *See id.* at 842. The record does include evidence supporting the dilatoriness of appellants in responding to discovery, and we agree with the trial court's determination that the conduct was sanctionable. We do not condone appellants' discovery abuse, but we conclude the sanctions the trial court imposed were excessive and fail to satisfy the standards pronounced in *TransAmerican*. We find no evidence to justify a legal presumption of lack of merit of all of Dao's claims. We find no effort by the trial court to first test lesser sanctions and no evidence that lesser sanctions would have been ineffective. During the hearing on the motion for sanctions, the trial court asked defendants to summarize what lesser sanctions had already been imposed. Defendants responded that the trial court had entered an order compelling discovery responses in 2011 and had reaffirmed that order in denying plaintiffs' motion for reconsideration. However, the entry of an order to compel is not a lesser sanction. *See Polaris*, 65 S.W.3d at 753. No threat of sanctions, much less death-penalty sanctions, for noncompliance with the court's orders was made prior to the entry of those sanctions here. Thus, we conclude the trial court abused its discretion in entering death-penalty sanctions against appellants and that "lesser sanctions must first be tested to determine whether they are adequate to secure

compliance, deterrence, and punishment of the offender." *See Chrysler Corp.*, 841 S.W.2d at 849; *see also Cire*, 134 S.W.3d at 842. We resolve appellants' second issue in their favor.

Having found the trial court abused its discretion in imposing case determinative sanctions, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on October 15, 2014
Opinion Delivered May 14, 2015

Before McKeithen, C.J., Kreger, and Horton, JJ.